## LEE ET AL. v. CRAVENS ET AL.

1. PARTNERSHIP.
If persons were not partners *inter se*, they cannot be held as partners by third persons who were not misled by an appearance of a partnership.

2. SAME.
Participation in the profit of a venture, or even in the profit and loss, does not, of necessity, constitute a partnership between the parties entitled so to participate.

3. SAME.
One of the essential elements of a partnership is a community of interest in its subject-matter.

4. SAME.
One partner has the right to make contracts, incur liabilities, manage the whole business and dispose of the whole property of the copartnership for its business in the same manner as all the partners could when acting together. The authority of the several members is a necessary sequence of their community of interest, and there is no partnership *inter se* without it.

5. SAME.

When the agreement between two or more persons in relation to the prosecution of an enterprise provides that one of their number shall incur no risk and be chargeable with no loss, the agreement is not one of partnership.

6. SAME—EVIDENCE.

Parol evidence is inadmissible to vary the terms of a written contract, but if the terms of the contract are equally susceptible of different constructions, surrounding circumstances and the acts and even the declarations of the parties may be given in evidence and considered, not to change the terms of the agreement, but to ascertain what meaning the contracting parties intended to convey by the terms employed, and to discover which of the constructions the parties themselves placed upon the language used.

*Error to the District Court of Arapahoe County.*

Messrs. THOMAS, HARTZELL, BRYANT & LEE, for plaintiff in error.

Mr. A. S. BLAKE and Mr. A. M. STEVENSON, for defendant in error, First National Bank of Glenwood Springs.

Mr. A. P. RITTENHOUSE, for other defendants in error.

THOMSON, J., delivered the opinion of the court.

In April, 1884, Elisha B. Cravens settled upon a tract of land near Glenwood Springs, Colo., under the preëmption laws of the United States, for the purpose of acquiring title to the land from the government. On the 29th day of August, 1885, he tendered to the register and receiver of the proper land office proof of the settlement and improvement required by law, together with the requisite fees and charges.

On the day of making the tender contests were instituted in the land office, against his application for patent, by sundry persons, and on the same day he became involved in an altercation with one Fuller, and shot and killed him. A prosecution for murder followed, and Cravens employed Joseph W. Taylor as his attorney to represent him in the contests in the

land office and to defend him in the criminal prosecution. The contests against the preëmption claim and the criminal prosecution were conducted with persistence and determination, and necessitated the outlay by Cravens of considerable sums of money. He was without means, and was compelled to rely upon his prospective title to secure the requisite funds. In pursuance of authority given him for the purpose by Cravens, Taylor proceeded to negotiate loans and employ assistance. For the purpose of securing the repayment of moneys advanced, and defraying the expenses of the litigation, contracts were from time to time entered into between Cravens and Taylor, which will receive more specific notice hereafter.

In July, 1888, for the purpose of protecting Taylor, and securing persons from whom money had been obtained, as well as making provision for obligations to be incurred in the future, and in order that the land might be bound for the indebtedness, Cravens confessed a judgment in the district court of Pitkin county in favor of Taylor for $103,500. Among the contracts made by Taylor was one with Joseph Reynolds on the 22d day of August, 1889, affecting money before that time loaned by Reynolds to Taylor for the purposes of the litigation. This contract cuts an important figure in the case before us, and will receive special attention hereafter. In February, 1891, Reynolds died, and E. M. Dickey became the administrator of his estate, his sole heir being his widow, Mary E. Reynolds. In April, 1892, the litigation in the land office terminated, and a United States patent was issued to Cravens for the land. After the issue of the patent Dickey took steps to bring about a settlement between the estate and Taylor, of the matters embraced in the contract between Taylor and Reynolds, and for that purpose employed Charles S. Thomas as the attorney of the estate. In pursuance of negotiations looking to the settlement, it was decided that Cravens should convey the land to Clinton Reed in trust; that a corporation should be organized, to be called The Glenwood Land & Improvement Company,

with a capital stock of 150,000 shares, of one dollar each; that upon its organization Reed should convéy the land to the company; and that one half of the stock should be issued to the estate of Reynolds. The land was accordingly conveyed to Reed, who thereupon executed a declaration of trust, in which he agreed to convey the land to the corporation, and to receive the entire capital stock, and hold it in trust for the uses and purposes to be designated and appointed by Taylor, and distribute it to such persons as Taylor should direct. The deed to Reed was an ordinary warranty deed, and purported to vest the title absolutely in him. The deed was placed on record, but the declaration of trust was not. A certificate of incorporation of The Glenwood Land & Improvement Company was executed, but the land was never conveyed to the company.

After the incorporation of the company, Thomas, in behalf of the estate, applied to Taylor to complete the transaction in accordance with the agreement he had made. Taylor produced a statement showing the expenses incurred in acquiring the title to the land, amounting to something over $76,000, claiming that there was due to him from the estate a sum in excess of $13,000, and proposing to direct a conveyance from Reed to the company, on condition that the estate would pay him that sum. Attached to the statement was a contract signed by Taylor and Cravens, dated June 1, 1892, which provided, among other things, that, in case Taylor should decide not to have the land conveyed to the company, he might have it conveyed so as to secure to himself or his assigns 14/15 thereof. The representatives of the estate questioned the correctness of the statement and the indebtedness to Taylor, and declined to pay the money. He then proposed that if the estate would accept the amount which Reynolds had loaned, amounting to $14,700, together with $250 advanced by the estate to pay the cost of incorporating the company, and Mr. Thomas's charges for his services in the negotiation, and assign him the contract between him-

self and Reynolds, he would pay it, and thus end the dispute. This proposition was accepted.

Shortly afterwards Taylor notified Thomas that he was unable to obtain the money, and proposed to give his own note for the amount, and secure it by a trust deed on the property. This proposition was also accepted, and Taylor thereupon made his note for $15,500, payable to Thomas as representing the estate, due in 18 months, with interest at 6 per cent per annum; and Reed, at Taylor's direction, executed a deed conveying the land to Harry H. Lee, as trustee, to secure the payment of the note. The note was made, and the trust deed executed, on the 3d day of August, 1892.

After the conveyance by Cravens to Reed, entry of satisfaction of the judgment confessed by Cravens to Taylor was made upon the record. On the 22d day of December, 1892, Reed, by Taylor's direction, conveyed the land to John H. Fesler, in trust, to secure a note of that date made by Taylor to H. R. Kamm for $10,225. This note was discounted for Kamm by the First National Bank of Glenwood Springs, which thus became its owner.

Shortly after this, Reed, acting in pursuance of Taylor's instructions, conveyed the land by warranty deed to Ed. T. Taylor, and the latter subsequently conveyed it to Joseph W. Taylor. On the 16th day of March, 1894, default having been made by Joseph W. Taylor in the payment of his note to Mr. Thomas, the trustee, Harry H. Lee, at the request of Mr. Thomas, advertised the land for sale pursuant to the authority vested in him by the trust deed.

On the 19th day of April, 1894, Elisha B. Cravens commenced this action against Lee, Thomas, Joseph W. Taylor, Reed, and others, alleging that the trust deed from Reed to Lee was in excess of the authority of Reed in the premises; that at the time of its execution all persons connected with the transaction had knowledge of the limitation upon Reed's authority; that the conduct of the proceedings in behalf of Cravens was an enterprise in which Joseph W. Taylor and Joseph Reynolds were copartners under the firm name of

Taylor & Reynolds; and that there were outstanding unsatisfied debts of the partnership. The prayer was for general relief, and for an order enjoining the sale of the property by Lee. Mary E. Reynolds, the First National Bank of Glenwood Springs, and a number of persons who were alleged to be general creditors of the partnership were made parties defendant. The defendants severally filed their answers and cross complaints. As to some of the defendants these pleadings were dismissed by the court, and by its leave petitions in intervention were substituted. Errors are assigned upon these rulings, but we do not find it necessary to make them the subject of investigation.

Upon the final hearing the following findings were made and decree rendered:

"*First.* That Jos. W. Taylor and Jos. Reynolds were partners in the business and enterprise of obtaining patent to lots No. two (2), three (3), four (4), and five (5), in sec. six, township nine S., R. 89 W., Garfield county, Colorado, being the land described in the pleadings herein.

"*Second.* That the partners were by the terms of the partnership to be equally interested in all that was realized out of the enterprise, and equally liable for the expenses incident to the business of the partnership, including the expenses connected with defending said Cravens on the prosecution for murder, referred to in the pleadings.

"*Third.* That, as between the partners, the affairs of the partnership were settled on August 3, 1892, by Jos. W. Taylor executing to C. S. Thomas, for the benefit of the estate of said Joseph Reynolds, the note for $15,500 referred to in the pleadings, and causing the same to be secured by a trust deed upon the land, being the trust deed mentioned in the pleadings herein as having been executed by Clinton Reed to Harry H. Lee to secure said note.

"*Fourth.* That before the execution of that trust deed Cravens had conveyed the land in trust to Clinton Reed, for the purpose of paying the expenses of the litigation attend-

ing the obtaining patent to the same, and the expenses of his defense on the prosecution for murder above referred to.

"*Fifth.* That said land became the assets of said partnership, subject to the debts of the partnership contracted in obtaining said patent and conducting said defense.

"*Sixth.* That the legitimate claims of the interveners are prior liens upon said land, and take precedence of the said trust deed executed to Harry H. Lee to secure said Thomas note.

"*Seventh.* That on December 22, 1892, said Jos. W. Taylor borrowed from one H. R. Kamm, of Glenwood Springs, Colo., the sum of $10,225, and executed his note therefor, and caused the same to be secured by a trust deed on the property, which said note and trust deed are now the property of the defendant the First National Bank of Glenwood Springs, Colo.

"*Eighth.* That, in so far as the money so borrowed was applied to the payment of the debts of said partnership, said First National Bank of Glenwood Springs is subrogated to the rights of the creditors paid, and such amounts so paid are a prior lien on said land, and take precedence to said trust deed executed as aforesaid to Harry H. Lee.

"*Ninth.* That, of the money so borrowed, $4,194.59 was used in paying legitimate debts against said partnership, and to that extent said bank is subrogated to the rights of the creditors paid, and has a prior lien on said land, taking precedence to said Thomas's trust deed.

"*Tenth.* That the debts so paid were: Joseph F. Clement, $2,241.59; E. B. Cravens, $850; Barney Napier, $330; Louis Schwartz, $313; taxes, $460.

"*Eleventh.* That there is due from said partnership to said interveners as follows: Phillip B. Thompson, Jr., $1,250; William A. Stone, $750; Mary L. Minor, $1,400. For which amounts said interveners have liens on said land prior to said Lee and Thomas trust deed, and prior to said Kamm trust deed, except $4,194.59 thereof.

"*Twelfth.* That the liens of said interveners and of said

First National Bank of Glenwood Springs for said $4,194.59 are of equal priority ; and in case said land is sold for cash by the defendant Harry H. Lee, in pursuance of the power in his trust deed, then out of the proceeds the claim of said interveners and of said bank, to the extent of $4,194.59, are to be first paid, in case so much is received, and, if not, what is received is to be paid *pro rata* on said claims of said interveners and said portion of said bank's claim ; the costs of this action, however, to be first paid out of such proceeds ; and, in case said sale is not for cash, then said interveners shall have a lien upon said land for their respective claims, said bank to the extent of $4,194.59, and said land shall be sold to satisfy the same.

" *Thirteenth.* That as to the plaintiff herein this action is ordered dismissed, to which order the plaintiff excepts. 

" *Fourteenth.* That the cross bill, counterclaim, and cross complaint of Joseph W. Taylor to the answer of Lee, Thomas and Reynolds is dismissed without prejudice.

" It is therefore ordered, adjudged, and decreed that the interveners and the First National Bank of Glenwood Springs have first and prior liens upon said lots two, three, four, and five, in section six, township nine S., R. 89 west, Garfield county, Colorado, the said Phillip B. Thompson, Jr., for the sum of $1,250, the said William A. Stone for the sum of $750, the said Mary L. Minor for the sum of $1,460, and the said the First National Bank of Glenwood Springs for the sum of $4,194.59 ; said liens to be of equal priority and precedence to the trust deed referred to in the pleadings herein as having been executed to the defendant Harry H. Lee to secure the payment of said note referred to in the pleadings herein for the sum of $15,500, executed by the defendant Joseph W. Taylor to C. S. Thomas for the use and benefit of the estate of Joseph Reynolds, deceased.

" And it is further ordered, adjudged, and decreed that said land be sold to pay the amounts of said claims and liens of said interveners and said bank, and that said sale be conducted in the manner provided by the statute of the state of Colo-

rado for the sale of real estate on execution, and that execution issue out of this court for such sale ; provided, said claims are not paid within ninety days from the date hereof.

" It is further ordered, adjudged, and decreed that in case the defendant Harry H. Lee sells said land under and by virtue of the power contained in said trust deed, for cash, the proceeds of such sale shall be applied—First, to the payment of the costs of this action ; and, second, to the payment of said interveners' claims and said bank's claim to the extent of $4,194.59, in case so much cash shall be received, and, if not, then what is received is to be applied to the payment of the claims of said interveners, and to that portion of said bank's claim so made a lien as aforesaid, *pro rata*. But in case such sale shall not be for cash, then the claims of said interveners and said bank, to the extent of $4,194.59, shall be and are hereby made a lien upon said land, and said land shall be sold to satisfy the same, including the costs as above ordered, except as to the costs caused by the plaintiff herein, which shall be paid by him."

All the parties to the proceeding are dissatisfied with the decree, and desire its reversal.

The argument in behalf of the alleged general creditors is based on the two hypotheses,—that Reed had no authority to execute either the trust deed to Lee or that to Fesler, and that Taylor and Reynolds were copartners. Upon the first hypothesis both trust deeds were void ; and on the second, the trust deed to Lee was an appropriation of partnership assets by one of the partners, and was therefore without effect as against creditors of the firm. These two positions appear to us to be fatally antagonistic. The claims of these creditors were for services. There was evidence tending to show that they were employed by Cravens himself, and, if such was the fact, it is a matter of no concern to them whether there was a partnership or not. But their pleadings allege employment by the partnership. They claim as creditors of the partnership, and the only relief sought is against the partnership. They allege that the land constitutes the assets

of the partnership estate, and they seek to subject it to the payment of their claims. The authority by which Reed executed the two trust deeds and that by which he made the deed to Ed. T. Taylor was the same. If he had no authority to make the former, he had none to make the latter, and it was therefore also void. Ed. T. Taylor, having no title, could convey none to Joseph W. Taylor, and the legal title would be still in Reed, Cravens remaining the equitable owner. The judgment confessed by Cravens to Joseph W. Taylor was satisfied by the latter upon the execution by the former of the deed to Reed. If, therefore, all these deeds and conveyances should be adjudged invalid, the partnership estate would have no assets. By overthrowing the title held by Joseph W. Taylor, the alleged surviving partner, the creditors would defeat themselves, and render their claims against the partnership worthless. On the supposition of a partnership, in order that the relief they seek in this proceeding may be of any value, the deeds which they assail must be upheld, in so far as the authority of Reed to make them is concerned. It does not seem to us to be in accordance with the fitness of things that an onslaught upon the deeds should come from them. The question, however, is also raised by Cravens, and will be considered.

The bank does not contest the authority of Reed to execute the deeds. On the contrary, it relies on that authority to give effect to its own trust deed. But it maintains that the relations between Taylor and Reynolds were those of partners; that the partnership estate could not be incumbered in favor of one of the partners to the prejudice of creditors; that, therefore, the trust deed to Lee was without avail as against creditors; and that, by virtue of the trust deed to Fesler, the bank was entitled to the payment of the debt due it before distribution to the other creditors.

The discussion between counsel embraces a number of other questions, but the conclusions which we have reached on the two principal ones render reference to the others

unnecessary. We shall, then, first consider the question of the validity of the trust deed executed by Reed to Lee.

The deed from Cravens to Reed was a warranty deed in the ordinary form. There was nothing about it to indicate that the conveyance to Reed was not absolute. The declaration of trust executed by Reed was on a separate piece of paper. It would seem to have remained in the possession of Taylor. There was no evidence that it was ever delivered to Cravens. Mr. Thomas testified that, until the filing of the complaint, he never had any knowledge, from any source, of any written declaration of trust from Reed to Cravens; and his testimony was uncontradicted. There was no evidence or pretense that any other person connected with the estate of Reynolds ever heard of the instrument. Whatever may have been done with the declaration of trust after its execution, it seems to have remained in a condition of "innocuous desuetude." From the subsequent conduct of Taylor and Cravens, it does not appear that it was regarded as of any importance by either of them. By the contract of June 8, 1892, between Cravens and Taylor, the conditions of the trust were changed, and it was left to Taylor's option whether he should direct the conveyance of the land to the corporation or dispose of it otherwise. Mr. Taylor testified that this contract was signed by Cravens upon condition that the Reynolds estate would pay the sum which he claimed was due him from it; but the evidence is that, if there was such a condition, Thomas was in ignorance of it. On June 16, 1893, Reed conveyed the property to Ed. T. Taylor, and on August 21, 1893, the latter conveyed it to Joseph W. Taylor. Both conveyances were made subject to the trust deed to Lee and that to Fesler. On August 21, 1893, Mr. Taylor, in an investigation of the sufficiency of a bond given in a cause pending in court, upon which he was surety, stated that he had a deed to the Glenwood Springs property; that he owned it, and had at all times owned it; that the land was put into the name of his nephew Ed. T. Taylor for convenience, but that he owned it while it was in his nephew's

name, and still owned it; and that any statement to the contrary was not according to the fact. The evidence further discloses that the prime mover in this litigation was Taylor, and not Cravens. Taylor sent a telegraphic message to Cravens, who was at Enid, in Oklahoma territory, that a suit was necessary to protect creditors; and instructed him to telegraph back to A. S. Blake, at Denver, "Enjoin sale of my ranch at once," which Cravens accordingly did. Cravens never saw the papers in the case until he came to attend the trial. Taylor signed the name of Cravens to the injunction bond without any direct authority to do so, and Cravens, when he learned the fact, acquiesced. A temporary injunction was granted in the cause on the affidavit of Taylor. The First National Bank of Glenwood Springs paid Cravens's expenses from Oklahoma to Denver to attend the trial. Cravens was in Colorado when Reed made the trust deed to Lee, and also when the deed from Reed to Ed. T. Taylor and that from Ed. T. Taylor to Joseph W. Taylor were executed; and, although he testified that he knew nothing of them until the trial, yet, when his attention was called to them, he expressed no disapproval of the acts of Taylor in directing them. He saw Taylor frequently during the time of all these transactions, but made no inquiries, and paid no attention to what was being done. He paid no taxes on the property, and made no arrangements for the taxes. Before Reed's conveyance to Ed. T. Taylor, Joseph W. Taylor had the land platted into town lots, and told Cravens he was going to sell them, and the latter made no objection. Cravens, on being asked who was going to make the deeds to the lots when they were sold, replied that he did not know, but supposed they would be made by Reed because he had the title. Cravens testified that he gave the deed to Reed to see that the debts were paid; and Taylor's testimony was that if the land had been sold before the note became due, for enough to pay off all, Cravens would probably never have known anything about it; that the only interest Cravens would have in the property, if he should regain it, would be to see that

it was devoted to the payment of the debts. Taylor, at different times, paid Cravens money on account of the land, the payments aggregating a considerable sum; and finally furnished him money to go to Oklahoma, where he intended to remain. He made the trip from Oklahoma to Denver in obedience to Taylor. Taking all the evidence together, not excluding the declaration of trust itself, its effect is that from the time when Cravens confessed the judgment in Taylor's favor, down to the commencement of this litigation, Taylor had full control of the property, for the purpose of discharging the debts which were contracted for Cravens and remunerating himself for his services; and that the position of Cravens in relation to the property, as well as in relation to this suit, was that of a figurehead. The court found that the conveyance from Cravens to Reed was made for the purpose of paying the expenses of the litigation attending the application for patent and the expenses of Cravens in the prosecution against him for murder. We think that the evidence supports the finding, and that the scheme of deeding the property to the Land and Improvement Company, and using its stock, was only one of the methods considered for effectuating the purposes of the conveyance to Reed. That method was not adopted, but the trust deeds to Lee and Fesler were in line with the apparent general purpose for which Reed held the title; and, in view of the facts and conditions disclosed by the evidence, we cannot say that these deeds, made by Taylor's direction, were in excess of Reed's authority, especially at the instance of persons who, as we shall see hereafter, were not proper parties to the suit.

The other question is the one most elaborately argued, and it is, perhaps, not entirely free from difficulty. There is no question of estoppel in the case. Reynolds was never held out as a partner with Taylor. No person ever dealt with Taylor on the supposition that Reynolds was his partner, or, so far as appears, with any knowledge or suspicion that any relation of any kind existed between them. The question therefore is, were they partners as between themselves? If

they were, they were partners as to all the world. If they were not, they cannot be held as such by third persons, who were not misled by an appearance of partnership. *Beecher v. Bush*, 45 Mich. 188; *Refining Co. v. Rucker*, 6 Colo. App. 334. The sole evidence upon which reliance is placed to establish a partnership is the following contract:

" This agreement, made and entered into this 22d day of August, A. D. 1889, by and between Joseph Reynolds, of Chicago, Illinois, and Joseph W. Taylor, of Leadville, Colorado,

" Witnesseth: that whereas, some time ago said Taylor was employed by one E. B. Cravens to aid him in securing title to lots Nos. 2, 3, 4, 5, in Sec. 9, Tp. 6 S., R. 89 west, in Garfield county, Colorado ; and

" Whereas, said Cravens was without funds, and said Taylor was compelled to advance and loan to said Cravens the money necessary to improve the land, and to pay the expenses of the litigation attendant thereon, as well as other expenses of said Cravens; and

" Whereas, said Reynolds has aided said Taylor in the matter, and has loaned him large amounts of money to aid in paying such expenses; and

" Whereas, the amounts advanced and loaned to said Cravens have been much greater than originally anticipated, so much so that the parties hereto deem it equitable and just to cancel all prior agreements with reference to the matter, and to make this agreement in lieu of all past agreements:

" It is therefore agreed by and between the parties hereto that they are and shall be equally interested in all that is made out of the venture, and that when the litigation is finally settled said Reynolds is to have one half of everything that is realized, and in case the title to said land, or any portion thereof, is secured, then one half of said land; each party on a final accounting to be responsible for an equal proportion of the expenses and moneys loaned and used in the premises, provided the venture is a success, but

unless it is Reynolds is not to be responsible for any other or further sum than he has already advanced.

"And whereas, said Taylor contracted with the D. & R. G. R. R. and with the Colo. M. R. R. Co., amounting in the aggregate to about $25,000, to be paid as soon as Cravens obtains title to said land, it is agreed that said Reynolds and Taylor shall be and are equally interested in those contracts.

" And whereas, said Taylor has a judgment against said Cravens in the district court of Pitkin county, Colorado, which is a lien on said land, it is agreed that said Reynolds and Taylor are and shall be. equally interested in said judgment.

" Witness our hands and seals the day and year first above written.

" [Signed in duplicate]     JOSEPH REYNOLDS.     [Seal.]
                            " JOSEPH W. TAYLOR.     [Seal.]"

It appears from the recitals in this contract that Taylor had been employed by Cravens to aid him in securing title to the land in question; that Cravens had no money with which to do the necessary work and pay the necessary expenses; that Taylor had advanced him funds for the purpose, and that Reynolds had loaned Taylor money to enable him to make the advances. For the money loaned by Reynolds he was to have an equal interest with Taylor in what the latter should be able to make out of the "venture" and the same interest in some other matters. As to what the "venture" was, or what was expected to be realized from it, or how it was to be realized, the contract is not very lucid; but Taylor was employed by Cravens to give him assistance in procuring title to a tract of land, and it is safe to assume that by the terms of the employment Cravens was to recompense him in some way. What he would receive in consideration of the assistance or services he might render would be what would be made out of the venture. This would belong to Taylor. Taylor's employment involved the expenditure of money by him, and he was compelled to procure a portion of it

from outside sources. He obtained loans from Reynolds, and these loans were the occasion of the contract between the two. Now it seems to us that the instrument is, in effect, so far as the venture is concerned, nothing more than an assignment by Taylor of one half of what he expected to make out of his employment, in consideration of the money he had obtained from Reynolds, and of some additional money to be paid by the latter if the enterprise should have a successful issue. We do not think it proves a partnership. There are important elements of a partnership which are not contained in it. Reynolds was to have an equal interest with Taylor in something to be realized. Probably this something may be called "profit;" but participation in profit, or even in profit and loss, does not of necessity constitute a partnership. One of the essential elements of a partnership is a community of interest in its subject-matter. In the management of the common business each partner is a principal as to the partnership and an agent as to the other partners. He has the right " to make contracts, incur liabilities, manage the whole business, and dispose of the whole property of the partnership, for its purposes, in the same manner and with the same power as all the partners could when acting together." The authority of the several partners is a necessary sequence of their community of interest, and there is no partnership without it. *Dwinel v. Stone*, 30 Me. 384; *Beecher v. Bush*, *supra;* Lord Cranworth, in *Cox v. Hickman*, 8 H. L. Cas. 306 ; *Mollwo v. Court of Wards*, L. R. 4 P. C. 419; *Eastman v. Clark*, 53 N. H. 276.

This contract provides for no community of interest in the business which Taylor was conducting. The interest of Reynolds was confined to what might finally be realized by Taylor from the business. In the meantime Reynolds would have no control of it, and could make no outside contract in relation to it which would be binding on Taylor. It was only after the business should be finally concluded by Taylor that the interest of Reynolds would attach and it would then attach only to the product of the business, and must be

accounted for to Reynolds by Taylor. In everything pertaining to the management and conduct of the business, Reynolds lacked the power of a partner, and, as this power is essential to a partnership relation, its absence involves the absence of the relation.

Another incident of a partnership is the sharing of losses by the partners. The partnership contract may say nothing about losses, but the right to participate in profits implies a corresponding liability for losses ; and it has accordingly been held that an agreement for the division of profits is admissible in evidence as tending to show a partnership. Where, however, an agreement· between two or more persons, in relation to the prosecution of an enterprise, provides that one of their number shall incur no risk, and be chargeable with no loss, the agreement is not one of partnership. *Ruddick v. Otis*, 33 Iowa, 402; *Scott v. Campbell*, 30 Ala. 728; *Pattison v. Blanchard*, 5 N. Y. 186; *Hazard v. Hazard*, 1 Story, 371; *Vanderburgh v. Hull*, 20 Wend. 70.

Now it seems to be quite clear from this contract that there was to be no liability for losses against Reynolds. He was to be responsible upon a final accounting for an equal proportion of the expenses, provided the venture should be successful, but otherwise nothing was chargeable against him. If the venture was successful, there would be a profit over expenses already paid and to be paid; there would be no loss. But if the venture should be a failure, and result in actual loss, Reynolds would sustain none of it, except to the extent of the advancements he had already made. As some essential elements of a partnership are lacking, we are unable to deduce that relation from the contract. The contract alone does not prove a partnership, and we think we might safely go even further, and say that it is inconsistent with a partnership.

But if we should concede for the present that an intention to form a partnership is not inconsistent with the language of the instrument, then, as that language is entirely consistent also with an opposite intention, we must go outside

to find what the real intention was.   Parol evidence is inadmissible to vary the terms of the contract, but, if they are equally susceptible of two different constructions, surrounding circumstances, and the acts and even declarations of the parties, may be considered, not to change the terms, but to find what meaning the contracting parties intended to convey by them, and discover which of the constructions the parties themselves placed upon the language used; and this, without violating any rule of evidence.   Whart. on Ev., secs. 939, 940; 1 Greenl. on Ev., secs. 277, 288; *McPhee v. Young*, 13 Colo. 80.

Reynolds died a year and a half after making the contract, and there is no evidence at all from which it can be gathered how he regarded it.   There is, however, some evidence from which the views of Taylor on the subject may be inferred. December 27, 1892, is the date of one of his contracts with Cravens.   This contract was executed after Taylor made his note to Thomas.   The purpose of the contract was to provide for the payment of the debts by Taylor out of the land; and Taylor, among other enumerated claims, agreed " to pay C. S. Thomas the amount due the estate of Joseph Reynolds, for $15,500, with interest."   When Taylor made that contract it seems not to have occurred to him that Reynolds was his partner.   If he had understood that Reynolds was his partner, and that the money which Reynolds had advanced was invested in a partnership business, he surely would not have recognized the advancements as an indebtedness to the estate of Reynolds.   That he treated the amount as a debt to the estate, put it in the same category with the other debts, and made provision for its payment, would seem to be inconsistent with any supposition of Taylor at the time that himself and Reynolds were partners.   Mr. Thomas testified that after the maturity of the note from Taylor to Thomas, when the latter, under instruction from the administrator, was about to cause the property to be advertised for sale, and Taylor was endeavoring to procure a postponement of the proceeding, a conversation took place between himself and

Taylor, in which Taylor said that there was a very serious question whether the Reynolds estate was not liable for the debts contracted in getting the title; that the agreement between himself and Reynolds came very near making Reynolds his partner; and that just as good lawyers as Thomas had passed upon the contract, and thought that it came very near being a partnership. This conversation was not denied by Taylor, and his expressions are as significant for what they do not, as for what they do, contain. They contain the first mention of a partnership that we find in the record. In all the negotiations between Taylor and Thomas and Taylor and the administrator, for the settlement of the claim of the estate against Taylor, there was no suggestion of partnership; and when at last the suggestion came, it was not a suggestion of actual partnership. Taylor did not say that there ever was any understanding between himself and Reynolds that they should be partners, or that the agreement between them was made for the purpose of creating a partnership, as he surely would have done if such had been the fact. He based his claim of partnership entirely upon a construction which himself and other lawyers were disposed to place upon the contract; and his suggestions were cautiously worded, and would indicate that he was not sure of his footing, even on the question of construction. His prior silence on the subject, the language in which he brought forward his claim, and the ground on which he based it, all indicate that a partnership was never intended by himself or Reynolds; but that, in seeking an avenue of escape from the complications with which he was beset, he grasped at the idea, whether it originated with himself or was suggested by others, that a partnership might be inferred from the contract, and the trust deed to Lee thus rendered unavailing for the purposes for which it was given.

We are therefore remitted back to the contract as the sole evidence of the partnership; but the contract is not evidence of a partnership, and we must hold that there was none. No rights were involved in the contract except those of the con-

tracting parties. Third persons were not concerned in it, and the subsequent disposition of it by Taylor and the representatives of Reynolds cannot be called in question. The title to the land had been obtained, and was controlled, if not owned, by Taylor. The administrator was clamoring for a settlement, and an attempt at adjustment on the basis of the contract failed. The parties then agreed to abandon the contract, and make provision for the repayment of the money Reynolds had loaned, which they had a perfect right to do. The result was the trust deed and note in question. This deed, being prior in time to that held by the bank, must be satisfied first out of the land. If, upon a sale, more is realized than is sufficient for that purpose, the surplus must be applied on the indebtedness to the bank as far as it will go, not, however, beyond payment of the amount due. Should there still be a residue, it will go to Taylor. There being no partnership, the unsecured creditors must rely upon the individual responsibility of the person with whom they contracted, and their remedy is at law. Their claims are not of equitable cognizance, and cannot be adjudicated in this proceeding. They have no standing in this case, and should be dismissed out of it. The conclusion of the trial court that there was a partnership between Taylor and Reynolds was erroneous, and all its findings, based on that conclusion, were therefore also erroneous. When the case was brought into this court, the trustee for the estate was about to sell the land, and we granted an injunction restraining the sale. That injunction will now be dissolved, and the cause remanded, with instructions to the district court that, in any further proceedings which may be had in the case, the lines indicated in this opinion shall be followed.

*Reversed.*