[No. 4316.]

## TAYLOR ET AL. V. THOMAS ET AL.

**1. Contracts—Mines and Mining—Leases—Division of Profits.**

Four parties owned a mining lease, each holding a one-fourth
interest therein. In consideration that two of them, defendants
herein, should pay all expenses of working the mine and assume
exclusive personal liability for such expenses if they exceeded
the earnings, the other two, plaintiffs herein, transferred to
them one-half of their interest, thus giving defendants each three-
eighths and leaving plaintiffs each one-eighth interest therein.
The profits were to be apportioned according to the interest of
each as follows: "When on the last day of any calendar month
the total receipts from the lease, after January 25, 1898 (which
was the date of the contract), shall exceed the total expenses of
the lease after January 25, 1898, to said last day of the month,
the surplus receipts on hand shall be divided  ·*  *  *  but at
any time when such receipts do not exceed such expenses, no
division shall be made." Held, that under the contract the ac-
counts were not to be closed at the end of each month, and the
losses, if any, borne by defendants, or the earnings distributed,
without regard to the accounts of any other month, but before
any division of profits was to be made the earnings of the entire
period from the date of the contract must exceed the entire ex-
pense for such time, and where for several months the mine was
operated at a loss, when the earnings did exceed the expenses
defendants were entitled to appropriate such profits to make up
the losses of the previous months before they were required to
pay anything to plaintiffs.

**2. Same.**

Defendants, two partners in a mining lease, were to operate
the mine and assume personal liability for all expenses and at
the end of each month divide the profits when there were such
profits to divide, retaining each three-eighths thereof and paying
to plaintiffs their two co-lessees each one-eighth. At the end of
each month during the continuance of the lease and for a period
of nearly two years, defendants furnished plaintiffs with an item-
ized statement of account. During the first several months the
mine was operated at a loss. When the earnings began to exceed
the expense defendants appropriated such profits to the payment
of the losses of the previous months before any dividends were
paid to plaintiffs. When all losses were paid regular dividends
were paid to plaintiffs at the end of each month and were re-
ceipted for by them without objection. Held, that plaintiffs ac-

quiesced in the construction placed on the contract by defendants, that the profits were only to be divided at the end of each month when there was a profit of the entire term of the lease up to that date, and will not be heard to insist that each month was to be taken as a separate period and its losses borne or profits divided without reference to any other month, and plaintiffs cannot excuse their long silence by showing that under the advice of counsel they deferred objection until after the termination of the lease because they feared that, if sooner made, litigation would result and the lease be thrown up.

**3. Same—Expenses.**

Under a contract between the lessees of a mine whereby two of them were to operate the mine, pay all expenses and divide the profits with their co-lessees, a reasonable proportion of the profits paid to another mining company for the privilege of working their lease through the workings of said company's mine was properly charged as expenses of operating the leased mine to be deducted before any profits were divided.

**4. Same—Royalties.**

Under a contract between the lessees of a mine whereby two of them were to operate the mine, pay all expenses and divide the profits, if any, with their co-lessees, the royalty provided in the original lease to be paid to the owner of the mine was properly deducted before any profits were divided.

*Appeal from the District Court of Arapahoe County.*

Mr. John A. Ewing and Messrs. Morrison & De Soto, for appellants.

Messrs. Belford & Belford and Mr. Herbert R. Belford, for appellees.

Chief Justice Campbell delivered the opinion of the court.

Action to recover profits accruing under a lease. On the 29th day of December, 1896, Charles H. Thomas and John F. Johnson, plaintiffs below, appellees here, and Frank M. Taylor and W. S. Copeland, defendants below, appellants here, secured from its owner a lease on the Fanny Rawlings mine at

Leadville, to run for a period of three years, at a specified royalty to be paid the lessor by the purchaser of the product of the mine. Each of the lessees owned an undivided one-fourth interest in the lease, was to bear one-fourth of the expenses of operating the mine, and to receive one-fourth of the net earnings of the lease. These four lessees having jointly operated the mine under their lease for a period of about thirteen months, to wit, until the 21st day of January, 1898, their interests and rights were, by an agreement made on that day, modified to the extent that plaintiffs Thomas and Johnson each transferred and assigned to Copeland and Taylor, the defendants, a one-eighth interest in the lease, so that, after January 25, 1898, when the contract went into effect, Thomas and Johnson retained each a one-eighth interest and Copeland and Taylor each a three-eighths interest. To the latter was delegated entire control in operating the mine, and they were required to render to their associates monthly statements showing receipts and expenditures.

After this new agreeement was made, the mine was worked and ore extracted therefrom shipped and sold to a smelter, monthly statements furnished and received, until some time in October, 1899, when, by consent of all parties, the lease was surrendered to the lesssor.

After the agreement of January 21 was made, defendants entered into a separate contract with the Big Four mining company, by which they acquired the right and privilege of carrying on work in the Fanny Rawlings mine through the workings of the Big Four company, and as a consideration therefor defendants agreed to pay to the Big Four company three-eighths of the profits of the lease on the Fanny Rawlings mine. In accordance with the requirements of the lease, defendants furnished to the plaintiffs

monthly itemized statements of account, and also, upon the termination of the lease and the closing up of the business, they rendered to the plaintiffs a final account, recapitulating the business done during the lifetime of the lease, from which it appeared that from January, 1898, to September of that year the expenses exceeded the receipts by $14,101.01; that in September the lease began to pay, and showed a profit of over $2,000, which was charged up against the losses, or excess expenses, up to that date. The months of October, November and December of that year each showed a profit, which aggregated more than sufficient to offset all expenses to that date, so that the statement for the month of December showed a dividend of $180 for each one-eighth interest in the lease, which amount was paid to each of the plaintiffs in January, 1899, and receipted for by them. Every month thereafter, up to the time the lease was surrendered in October, 1899, there was a net profit. The monthly statements showed clearly how the accounts were kept, all items with which the plaintiffs were charged, and receipts for the ores and balance due, and each one of the plaintiffs signed a receipt acknowledging the payment of the different sums of money from time to time, as per the statement furnished them. During the entire life of the lease the plaintiffs never made demand on the defendants for any additional sum, nor was any objection made by them to the accounts as furnished until about three months after the lease was surrendered, when this action was brought by plaintiffs to recover a balance which they claimed to be due under the new arrangement, in the aggregate sum of $24,362.02, upon three separate items of account; the first for an undivided one-fourth interest of $14,101.01, the amount of the excess expenses over the receipts up to the first of September, the second for the amount paid by the

defendants to the Big Four company for the privilege of working the Fanny Rawlings mine through the workings of that company and which defendants deducted from the receipts of the mine before the distribution of profits, and the third was for plaintiffs' alleged interest in the royalty paid by defendants to the lessor.

The trial court found in favor of defendants on the second and third, and in favor of plaintffs on the first, account, and upon the latter finding rendered a joint judgment against defendants for $3,525.25, which by this appeal defendants seek to reverse.. The plaintiffs have purported to assign cross-errors to the findings against them on the two items mentioned.

There are no disputed questions of fact.    The question is solely one of law, and its solution depends upon a construction of the terms of the contract of January 21, the material parts of which are here reproduced:

"First.    In consideration of W. S. Copeland and F. M. Taylor assuming and agreeing to pay all expenses of the lease incurred after January 25, 1898, Charles H. Thomas and John F. Johnson hereby agree to transfer and assign, and do hereby transfer and assign, to W. S. Copeland and F. M. Taylor each one-eighth interest in and to said lease, and W. S. Copeland and F. M. Taylor do hereby agree to pay all expenses incurred after January 25, 1898, it being the mutual intention that the respective interests after January 25th shall be as follows, viz.:   Charles H. Thomas and John F. Johnson each one-eighth ownership in the lease and one-eighth interest in the *profits resulting from .the operation of. the Lease, without personal liability for any portion of the expenses;* W. S. Copeland and F. M. Taylor, each three-eighths ownership in the lease and three-eighths in the profits, and each to be liable for one-half the ex-

penses, *if any, over and above the earnings of the said lease.*"

"Third. It is mutually understood that the *profits of the Lease, in which Charles H. Thomas and John F. Johnson have each one-eighth interest,* are to be computed and divided in the following manner, viz.: When on the last day of any calendar month *the total receipts from the lease, after January 25, 1898, shall exceed the total expenses of the Lease, after January 25, 1898, to said last day of the month, the surplus receipts on hand* shall be divided by check mailed on or before the tenth day of the succeeding month to the address of each party in interest, *but at any time when such receipts do not exceed such expenses, no division shall be made.*"

1. The chief dispute is over the method of ascertaining profits. The plaintiffs' position is that the contract means that the accounts shall be closed at the end of every month, and the loss, if any, at the end of the month shall be borne by the defendants absolutely without reference to the statement of accounts for the other months; that, if the expenses for any month, or series of consecutive months, are greater than the receipts for that month, or series of months, neither the total receipts, nor the profits, of any other month or months can be applied to the extinguishment of such excess expenses. In effect, plaintiffs say that the lease is divided into monthly rests or periods; that for the purpose of ascertaining and distributing profits the lease is divided into such periods or rests, each of which must stand on its own basis, without reference to any other period of the full term. Defendants, on the contrary, say that the contract on its face shows that in computing the profits the entire period during which the lease runs after January 25, 1898, must be taken into consideration, and though the distribution is to be made on the last day of any calendar

month after the date the contract becomes effective, provided any profits accrue during that month, nevertheless it was clearly the agreement of the parties that the method of ascertaining profits was by deducting the total expenses of operating the lease from the beginning up to the time when, if they existed, profits were to be divided, from the total receipts for that entire period; and that the expressions in the lease "total receipts from the lease, after January 25th," and "total expenses of the lease, after January 25th," can only mean, and were intended only to mean, that plaintiffs, upon the final accounting, were to receive their respective shares of the profits resulting from the operation of the lease for the full term.

The first clause of the contract, standing alone, in terms provides that plaintiffs are not to be personally liable for any part of the expenses incurred under the lease, but that defendants are to pay all of them. It is just as manifest that plaintiffs were to receive for their respective interests one-eighth only of the profits resulting from the operation of the lease, and the profits were to be what was left from the receipts after all expenses were deducted, and these profits were those resulting, not from the operation of the lease for some particular fraction of the term, but for the whole time it was to run. Such is the natural meaning of the language of this clause; but, if possible, this meaning becomes clearer from what is said in the third clause. Therein provision is made for the computation and division of profits which are to be determined by subtracting, on the last day of any calendar month, from the total receipts from the lease received after January 25, 1898, up to such last day of any month, the total expenses of the lease after January 25 up to such last day. This does not mean that the profits are to be reckoned by dividing the lease into monthly periods or rests, and by taking the

total receipts of each month and subtracting therefrom the total expenses of that month, wholly irrespective of the state of the account for other months, and distributing the surplus thus arrived at to the different interests.

The contract means just what it says: That, though the time at which the computation and distribution of profits, if any, are made, is to be on the last day of any month, the amount to be distributed monthly is only what is left of the total receipts from the beginning of the term of the lease up to that date, after there is subtracted from such receipts the total expenses of the lease incurred during the same period of time; and since the total expenses of the lease from February to September exceeded by over fourteen thousand dollars the total receipts for the same period of time, it was proper for the defendants to apply to the liquidation of such excess expenses the subsequent receipts until that excess was wiped out before distributing any profits. This construction does not violate that provision which imposes upon defendants the obligation to pay all expenses, and which relieves the plaintiffs from the payment of any portion, though the argument to the contrary, at first blush, may seem plausible that the withholding by defendants of profits until after all expenses are met is a practical requirement that plaintiffs shall pay a part of the expenses, all of which the defendants themselves agreed to pay. The fallacy of this argument is seen when it is recalled that, though plaintiffs were not to be personally liable for expenses, the receipts from sales of ore could be applied to expense account, and only profits are to be divided, and profits do not exist until after expenses are paid.

A construction should not be given to a contract that will result in oppression, if another construction can be reasonably made that will work justice. Let

us illustrate: A case might well be supposed under this very contract, that the managing lessees, during the first seventeen of the twenty months they operated the mine, restricted their work to a thorough and systematic development and blocking out of ore so as quickly to extract it during the closing months of the lease, and that, in such preliminary operations, they spent $100,000 without shipping a ton or receiving a dollar from sales of ore, and then, during the last three months, by rushing work and availing themselves of the antecedent work, they break down, ship and market ore to the gross value of $200,000, at an actual outlay during those three months of only $10,-000. Every one familiar with mining knows that similar instances are not uncommon, and that such methods are legitimate and economical and in accordance with scientific mining. But if the plaintiffs' construction of this contract is right, a great hardship would be inflicted upon the defendants, for the latter would be obliged to divide as profits $190,000, when $90,000 is the legitimate profit, for, as a matter of fact, the actual and legitimate expense of producing this ore began with the first day's work on the mine and aggregated $110,000, instead of $10,000.

The primary rule of construction of contracts is to make them speak the intention of the parties as gathered from the entire transaction. *Wyatt v. Irrigation Co.,* 18 Colo. 298; *McPhee v. Young,* 13 Colo. 80; and *St. L. D. L. & M. Co., etc., v. Tierney,* 5 Colo. 584. If this can be arrived at from the language employed, the court is restricted to that. If, however, there is any uncertainty about it, the interpretation which the parties themselves put upon the contract may be looked to. We have no doubt that the contract means just what defendants say, and when the uncertainties that necessarily attend mining operations are considered, it is not reasonable to believe that the par-

ties here made a contract that would work such an unconscionable result as the plaintiffs' contention would lead to, and we will not so hold unless the language compels it. If, however, there was doubt as to the meaning of the language used in this contract, the interpretation put upon it by the plaintiffs themselves is the one that defendants contend for. Every month during the term of the lease defendants, as required by its provisions, and as already stated, rendered to plaintiffs an itemized statement of account, and during the months when profits were realized these statements showed that they were computed on the basis of the total receipts of the lease from the beginning of the term to the last day of the particular month, and then by deducting therefrom all expenses incurred up to the day of reckoning. Checks for the shares of the profits thus computed were received and cashed by plaintiffs, and no objections made by them to defendants, either to the accounts as rendered or to the inadequacy of the profits, until several months after the lease was surrendered.

It may be that the separate defenses of the answer in which these facts are alleged do not technically constitute good pleas of account stated or accord and satisfaction; but, if so, the admission of the evidence establishing these facts was not objected to on that ground. But whether the anwer shows an account stated to which no reasonable objection was seasonably made by the plaintiffs, or whether an accord and satisfaction is well pleaded, is not important under the facts of this case. It is entirely clear that plaintiffs knew the construction which defendants put upon the contract when these statements, covering a period of nearly two years, were received by them and they never objected thereto until after a lapse of an unreasonable time.

As a matter of law, it would seem that plaintiffs

ought not now to be heard to insist upon another meaning. Their long silence is not justified by showing, and this is their only excuse, that under advice of counsel they deferred objection until after the termination of the lease because they feared that, if sooner made, litigation would result or the work stop, or the lease be thrown up. Fair dealing required that their objection be made within a reasonable time after the accounts were rendered, so that plaintiffs, if such a construction as plaintiffs now insist on was to govern, might elect to stop work, which the agreement permitted. If it be conceded that the answer defectively pleads these two defenses, still the fact is indisputable that by their conduct plaintiffs put upon this contract the same construction which defendants did, and which is the one that we have said it bears, and the one in accordance with which the defendants distributed the profits. They cannot now assume a different attitude.

2. As to the cross-errors assigned by plaintiffs, it is to be said that it is uncertain whether they have been assigned on the record as our statute requires. They are, however, easily disposed of on their merits. The payments to the Big Four company were properly chargeable to expense account. There is no contention that the work under the lease was unskillfully or extravagantly conducted, or that the contract made with that company for the privilege of working the Fanny Rawlings claim was not a suitable and reasonable one. Indeed, we are warranted in saying that operating the Fanny Rawlings mine through the Big Four workings was economical and proper and in accordance with good mining. As the amount paid for this privilege is not objected to as excessive, but only on the ground that it is not of such a character as to be included as a part of the expense, we are of opinion that the district court was right in declaring it a

proper charge, to be taken from the receipts before declaring profits.

3.   The royalty to be paid to the lessor was provided for in the original lease.  Plaintiffs claim that this item should be included in, and that it constitutes a part of, the expenses of operation to be paid by the defendants, and in no event to be a charge against them.  It is clear, however, that the receipts contemplated by the lease out of which profits were to be paid mean only such part of the receipts as, by the very terms of the original lease, belonged to the lessees, and these were the receipts left after the royalty was paid.  The royalty reserved for the lessor never belonged to the lessees.  It was a primary charge on the receipts, and was the sole property of the lessor as its consideration for the lease.  It cannot be said that royalty constitutes any part of the expenses of operating the lease.

It follows that the findings and judgment of the court as to the items relating to the Big Four company and the royalty are right, and as to the first item concerning profits wrong.  Plaintiffs' assignment of cross-errors is not well taken, and the judgment of the trial court with reference to them is affirmed.  On defendants' appeal the judgment is reversed and the cause remanded, with instructions to dismiss the action.

*Reversed.*