# THE ST. LOUIS & DENVER LAND AND MINING CO.
## *et al. v.* TIERNEY.

*(Supreme Court of Colorado, December Term, 1881—Appeal from the Arapahoe District Court.)*

1. CONTRACT—CONSTRUCTION OF. The contract sued on is in the following words:    "James F. Tierney to the Boulder Valley Coal Company: I hereby contract and hold myself responsible for the safe and prompt delivery of all the Boulder Valley Coal Company coal in the city of Denver, and to all parts of said City of Denver, and will hold myself responsible for all returns from C. O. D. orders, and all coal that may from time to time be delivered in the wrong place, so as the Boulder Valley Company will be at no loss in any way connected with the transporting the said coal from their yard to the consumers of said coal, and that myself and all my teamsters will be always kind and accommodating to all who they may have any business with, for the sum of forty cents per ton in large and small quantities, with stable and yard privileges included, for one year from June 1st, 1877, to June 1st, 1878.   [Signed]

June 1st, 1877.                                JAMES F. TIERNEY."

"J. F. TIERNEY, ESQ.:  I accept the above proposition for and on the part of the Boulder Valley Coal Company.

By JOHN STEWART, Superintendent.

*Held :*  To be a contract binding on both parties for the period of one year—the inference being clear that both parties at the time of entering into the contract so intended.  The fact that plaintiffs, during the period, by their own voluntary act put it out of their power to comply with the terms, does not release them from the obligation of the contract and damages for a breach thereof.

2. AUTHORITY OF AGENT—RATIFICATION. It is too late for the principal to deny the authority of an agent to bind it by contract, after recognizing, acquiescing and executing the same for seven months.

3. EVIDENCE. The contract being set out *in hoec verba* in the complaint, and its terms not being denied—the defense resting upon a denial of the authority of the agent to bind the principal—there was no necessity for proof of the terms, and no substantial error in admitting a copy of the contract in evidence.

BECK, J.  The appellee brought suit in the Court below against the appellant upon a contract for the delivery of coal, alleging as a breach thereof, that on the 23d day of January, 1878, while the contract was in force, the appellant without cause or excuse discharged him and refused to allow him to deliver any coal under it.

The contract is as follows :

"James F. Tierney to Boulder Valley Coal Company.  I do hereby contract and hold myself responsible for the safe and

prompt delivery of all the Boulder Valley Coal Company coal in the city of Denver and to all parts of said city of Denver, and will hold myself responsible for all returns from C. O. D. orders, and all coal that may from time to time be delivered in the wrong place, so as the Boulder Valley Coal Company will be at no loss in any way connected with transporting of the said coal from their yard to the consumers of said coal, and that myself and all my teamsters will be always kind and accommodating to all who they may have any business with, for the sum of forty cents per ton, in large and small quantities, with stable and yard privileges included, for one year from June 1st 1877, to June 1st, 1878.

JAMES F. TIERNEY."

June 1st, 1877.

"J. F. TIERNEY, Esq.  I will accept the above proposition for and on the part of the Boulder Valley Coal Company.

By JOHN STEWART, Superintendent."

One ground of defense set up in the appellant's answer was, that no coal was sold and delivered in the city of Denver by the appellant during the period between January 23d, 1878, and June 1st, 1878.

The trial resulted in a verdict in favor of the appellee of $200. He remitted $60, and judgment was entered on the verdict for the sum of $140.

Appellee's testimony showed that he commenced the delivery of coal under the contract on the day of its date, and continued to perform the agreement on his part until the 23d day of January, 1878, when he was informed that there was no more coal for him to deliver.  It likewise showed that the stipulated consideration was paid him from time to time, by the officers of the coal company, up to the latter date.

Counsel for the appellant offered to prove, in defense, "that at no time after the 31st day of December, 1877, was there any coal shipped by the defendants' company from the company's mine (which is situated thirty or forty miles from the city of Denver), to said city, nor was any coal delivered after said time by said company in the city of Denver to consumers, nor was there, after that date, any coal belonging to said company, in said city of Denver, subject to delivery by or under the contract of said company, after the said 31st day of December, 1877, but that on the contrary all the coal mined at said mine, by said company after

that date, was by said company sold at the mouth of the pit to W. H. Pierce, who paid for it at that point and shipped said coal to the city of Denver, paid the freight, and handled and had sole control and disposition of said coal after the said 31st day of December, A. D. 1877."

Objection being made, the offer was denied by the Court. This offer of testimony, and the ruling thereon, raises the principal question presented by this record, which is, how is the contract to be construed in respect to the period of employment?

That the object to be attained in the construction of a contract is to discover and effectuate the intentions of the parties, and to this end that the Court will adopt that construction which will bring it as near the actual meaning of the parties as the words they saw fit to employ, when properly construed, will permit, are elementary principles of construction.

As a guide to a correct interpretation, the law also permits the subject matter of the contract, the situation of the parties at the time of its execution, and all the surrounding facts and circumstances, to be taken into consideration.

In the case at bar the record discloses these facts: That on and prior to June 1, 1877, the appellant was the owner of a coal mine, situated in the country several miles distant from the city of Denver, and had been and was then engaged in the working of its mine, and of transporting coal therefrom by railroad to its coal yard in the city, from which it retailed and delivered the same to its customers in and about the city.

Tierney, the appellee, had been engaged in the business or employment of delivering coal, and had teams and wagons for the purpose. Under these circumstances, Tierney made the above proposal to Stewart, the superintendent of the coal company, to deliver all its coal for the period of one year at forty cents per ton. The superintendent accepted this proposal on the part of the company, unconditionally. It thereupon became the contract of both contracting parties (assuming the power of the superintendent to make such a contract), to the same extent and effect, as if drawn in the form of an agreement by Tierney of the one part, and the coal company of the other part, and signed by both parties.

But counsel for the appellant think the judgment cannot be sustained, for the reason, as they contend, that the company is

not guilty of any breach of the agreement. They say there is no agreement on the part of the company, express or implied, that it will continue the business of shipping coal from the mine to its yard in Denver, and of retailing the same therefrom to consumers in the city, for one year, or for any time.

In answer to the suggestion of the opposing counsel, that the agreement to continue the business is implied, they say:

"We do not deny that covenants may be implied, and we think there is an implied covenant in this agreement, viz.: That whatever coal appellants should have for delivery to consumers in the city of Denver, during the year, the appellee should deliver and be paid forty cents per ton."

This construction is clearly untenable. No necessity exists to imply such a covenant as this. The stipulation of the contract is, that Tierney shall deliver all the company's coal, and be paid therefor forty cents per ton. A covenant cannot be implied where the same subject matter is covered by an express covenant. If counsel had said there was an implied *reservation* in favor of the appellant that it might discontinue the business at any time, their meaning would have been better expressed.

After due consideration of the language employed in this agreement, and viewing the agreement in the light of surrounding circumstances, it seems only reasonable to infer that both parties, at the time of entering into the contract, supposed that the business would continue for a year at least. The company owned the mine, and it was in successful operation; the business of shipping and retailing coal was an established business, and there is nothing in the record to show that the project of selling the coal at the mine, or discontinuing the Denver business, had ever been contemplated.

Had the superintendent supposed that the business might be discontinued before the expiration of the year, the presumption is he would have qualified the written proposal before accepting it; and, had Tierney not intended to bind the company as well as himself, to performance for a full year, it is highly probable that the proposition would have been differently expressed.

Mr. Parsons says: "A party will be held to that meaning which he knew the other party supposed the words to bear, if this can be done without making a new contract for the parties." 2 Parsons' Contracts, 499.

The superintendent of the appellant must have known from the words of the proposal, that Tierney supposed it would become obligatory upon both parties when accepted, for the period stated, the one to furnish coal for delivery, the other to deliver it.

Such, therefore, being the evident understanding and intention of the parties, as imported by the language of their agreement, we are of opinion that the law implies a covenant on the part of the coal company, in the absence of an express stipulation, to continue the business for the period of time specified. This is the only construction which effectuates the intention of the parties, or gives force and effect to their agreement.

Tierney had bound himself to serve the appellant for a definite period of time, and, of course, obligated himself to provide everything necessary to the performance of the service which he was to render. Had he failed to provide necessary teams, wagons and drivers to deliver all coal sold from the yard, or had he accepted other employment for his teams which rendered him unable to fill all orders for coal during any portion of the year, (had the company seen fit to continue Denver business so long) would he not have been liable, under the contract, for damages occasioned by the breach?

If this be true, must not a correlative obligation have rested upon the appellant—that is, must we not imply a covenant that it would continue in good faith the business which constituted the basis of the contract? If it be said that Tierney was bound, in manner stated, but that the coal company was left free to terminate the engagement at its option, by a voluntary discontinu·ance of the business which furnished the employment contracted for, leaving the contractor, as in the present instance, with teams and drivers upon his hands in mid-winter, when it was impossible to find employment for them, then the contract was unilateral. This would render it void, for want of mutuality. But the contract is fairly susceptible of a construction which will support it. This construction ought therefore to be adopted, rather than one which would defeat it. 1 Chitty Conts., 111, 112.

It is not adding anything to a written contract to imply an obligation to do what was intended at the time it was entered into, and which is essential to its vitality and force.

The necessary inference, then, is that the appellant obligated itself to furnish appellee an opportunity to perform the contract

on his part.  This construction admits of the qualification, that, if the business had been suspended by acts or circumstances over which the company had no control, as by the exhausting of the coal veins, fire in the mine, or the flooding of the mine, the appellant would not be liable ; but where the breach is occasioned by the voluntary act of the party, the rule is otherwise.

· It is said that where a party enters into an agreement which can only take effect by the continuance of a certain existing state of circumstances, there is an implied engagement on his part that he will not, of his own mere motion, do anything to put an end to that state of circumstances under which alone the agreement can be operative.    1 Add. Cont., Sec. 236; 1 Chitty, Cont., p.  89; *Stirling* v. *Maitland*, 5 Best & Smith, p. 840.

The state of facts proposed to be proved by appellant on the trial showed a voluntary discontinuance of the business on the part of the company, by a sale at the mouth of the pit of all the coal mined.   These facts will constitute no defense to the action and were properly rejected.

In support of the foregoing views we cite the following authorities:   *Stirling* v. *Maitland*, 5 Best & Smith, p. 840; *Whittle* v. *Frankland*, 2 Best & Smith, p. 49; *McIntire* v. *Belcher*, 14 Common Bench (N. S.), p. 653; *Emmons* v. *Elderton*, 4 House of Lords' Cases, p. 624; *Black* v. *Woodrow*, 39 Md., 194; *Allaman* v. *The Mayor*, etc., 43 Barber, 33.

In regard to the other errors assigned, we are of opinion that no error occurred of sufficient importance to justify a reversal.

As to the authority of Stewart, the superintendent, to bind the company, we are disposed to agree with counsel for appellee, that it is too late to say that the company had no knowledge of the contract.

Tierney continued to execute it in accordance with its provisions for a period of more than seven months, during which time the officers of the company also performed it by permitting Tierney to deliver all the company's coal, and by paying him regularly the stipulated compensation.   If authority on the part of the superintendent to make such contract for the company was wanting, the long time during which it was executed by both parties, and the manner of its execution on the part of both, furnish strong grounds to presume a ratification.

As to the introduction of a copy of the contract in evidence, instead of the original, it is sufficient to say that no issue was tendered by the pleadings as to the execution of this contract. It was set out in *haec verba* in the complaint, and the answer only denies the authority of the superintendent to execute it on the part of the company.    That he did execute the contract declared upon is therefore admitted

Finding no substantial error, the judgment will be affirmed.

*Judgment affirmed.*

Chief Justice Elbert did not sit in this case.

*Benedict & Phelps*, for appellant.

*Brown & Putnam*, for appellee.