McPHEE ET AL. V. YOUNG ET AL.

1. CONSTRUCTION OF WRITTEN CONTRACTS — PAROL EVIDENCE.— In the construction of a written contract the intentions of the parties are to be first sought in the instrument itself. If the intent and meaning of the parties is not clearly disclosed by the language therein employed, then competent evidence bearing on the con-

struction of the instrument by the parties themselves, as by their acts and conduct in its performance, may be considered for the purpose of ascertaining their understanding of its terms.

2. Assignment of Building Contract — Ambiguities — Parol Evidence.— Where a contract for furnishing materials and building a house is assigned by the original contractors to another building firm on terms and conditions mentioned in the contract of assignment and referred to in an order subsequently drawn by the assignors upon the assignees and accepted by the latter, but payment thereof is subsequently refused on the ground of non-liability under the contract of assignment, and the two writings are found to be ambiguous, when compared together, as to the intentions and understanding of the parties, evidence of the subsequent acts of the parties is admissible to aid in the construction of the written instruments.

3. Pleading — Insufficiency of Complaint in an Action on Contract.— A complaint which misconstrues the contract sued on, and which contains no allegation entitling the plaintiff to recover upon it, is insufficient to sustain the action.

### Appeal from Superior Court of Denver.

In March, 1882, William and John Simpson, as William Simpson & Co., entered into a contract in writing to erect a dwelling-house for a Mrs. G. H. Clegg. After making certain arrangements for the erection of the house Simpson & Co. assigned the contract to appellants, Charles D. McPhee and John J. McGinnity, copartners, by an instrument in writing of which the following is a copy:

"For value received, as per agreement attached, we hereby assign the within contract to McPhee & McGinnity.

[Signed]          "William Simpson & Co."

The agreement referred to as attached was as follows:

"Denver, Colo., 3–28–1882.

"For and in consideration of McPhee & McGinnity furnishing to me all of the lumber, sash and door for Mrs. G. H. Clegg's dwelling on Lincoln avenue, on lot 28 and block 25, H. C. Brown's 2d addition, amounting to about

$700, as per bill, and they assuming the following sub-contract bills, as follows:

| | |
|---|---:|
| Brick-work to Parsons... ...... | $1,110 00 |
| Plastering to Harder & Bros ...... | 300 00 |
| Stone-work to Barker...... ...... | 72 20 |
| Plumbing, $200; painting, $120...... | 320 00 |
| Tinning and cornice, $180; stairs, $100... ...... | 280 00 |
| | $2,082 20 |
| McPhee & McGinnity bill ordered ...... | 700 00 |
| Making, in all...... | $2,782 20 |

— we hereby transfer to them our contract on said house, they paying the above bills, and we agreeing to attend to and build said house in consideration of them paying to us the balance of our contract price with Mr. and Mrs. G. H. Clegg after bills are paid.

[Signed]          "William Simpson & Co.

"McPhee & McGinnity."

After the assignment McPhee & McGinnity undertook the erection of the building under the contract, and fully completed the same. On April 18, 1882, Young & Savin, who were judgment creditors of William Simpson & Co., caused an execution to be issued and levied upon certain materials, which had been provided by appellants for the erection of the building in question. Soon after the levy negotiations were had between the parties, which resulted in the order and acceptance upon which this action was brought, and of which the following is a copy:

"*Messrs. McPhee & McGinnity, City* — Dear Sirs: Please pay to Messrs. Young & Savin, on account of my indebtedness to them, ten-fourteenths of the net profits or proceeds of the contract between William Simpson & Co. and Mrs. G. H. Clegg for construction of building on lot 28, in block 25, H. C. Brown's addition, after paying the labor, material and lumber bills recited in the assignment to you, made on March 28, 1882, and the sum of $3 *per diem* for time employed about said work by me.          [Signed]          William Simpson,"

This order was accepted unconditionally by appellants upon the day it was made. The house was completed about the 1st of July, and thereupon Young & Savin demanded payment from McPhee & McGinnity of the sum of $703. Payment was refused by appellants, and thereupon this action was brought.

Plaintiffs claimed that after paying the several sums specified in the assignment agreement, and the sum of $234 to William Simpson for labor, as provided by the acceptance, there remained the sum of $984.28, which constituted the "net profits or proceeds" of the contract, within the meaning of the order, to ten-fourteenths of which they were entitled. The complaint was drawn in accordance with this construction of the order.

Defendants claimed that, by the terms of the order, they were not liable to the plaintiffs; for the reason that no net profits or proceeds were realized from the erection of the building. By their answer they alleged, in substance, that, to carry out the contract assigned to them by Simpson & Co., it was necessary to furnish material and employ labor in addition to that mentioned in the assignment; that it was agreed that they should not only assume the payment of the several sums enumerated, but that they should also furnish all other lumber and material necessary to construct the building, and that they were to pay to Simpson & Co. only the balance of the contract price remaining after the payment of all bills incurred in the performance of the contract; that the amount expended for the additional material and labor necessary to complete the house was $1,161.78; that the total amount received by them on account of the contract was $4,057.50, and no more; and that there were no net profits or proceeds arising from the contract, but, on the contrary, a deficiency of over $150.

Certain portions of the answer were stricken out on plaintiffs' motion. The answer then consisted of the admission of the execution and delivery of the several

agreements mentioned in the complaint; a denial of the indebtedness of Simpson & Co. to Young & Savin; and admissions of the expenditure of the principal sums alleged in the complaint. The allegations of the amount received by defendants as above stated, and that no net profits or proceeds were realized from the contract, also remained in the answer.

Upon these pleadings the parties went to trial, and a verdict was rendered for defendants which was set aside upon motion of the plaintiffs, and a new trial ordered. A second trial was had, upon which the only evidence offered by plaintiffs was the transcript of the judgment rendered by the county court in their favor, against Simpson & Co., upon which the execution was issued.

A motion for a nonsuit was made, upon the ground that, according to the original contract, the contract of assignment, and the order and acceptance, to charge McPhee & McGinnity with liability to Young & Savin it must appear from the evidence that some balance of the contract price remained subject to the order after the payment of all bills necessarily incurred in the erection of the building; that the several contracts offered in evidence do not charge appellants with liability upon the order simply by proof that they received the contract price for the house; and that after deducting the bills specified in the assignment and the $3 per day paid Simpson a balance remained.

The motion for a nonsuit being overruled, the defendants offered evidence in support of the allegations of the answer, which had been stricken out, which evidence was excluded. Evidence was admitted, however, which tended to show that after the assignment of the contract William Simpson was employed by McPhee & McGinnity as foreman, and his brother John Simpson as timekeeper; that neither of them purchased any material or employed any of the labor necessary to complete the building; that from the moment the assignment was

made McPhee & McGinnity purchased all materials, and employed and paid for all labor.

At the close of the evidence the court of its own motion instructed the jury to return a verdict in favor of plaintiffs for the sum of $931.47. A verdict was rendered accordingly. A motion for a new trial was overruled, and judgment entered upon the verdict.

Messrs. PATTERSON & THOMAS, for appellants.

Mr. J. L. JEROME, for appellees.

PATTISON, C. Consideration in detail of the numerous errors assigned upon the record in this case seems unnecessary. The issue between the parties is clearly and well defined. If the written instruments which have been recited are capable of being understood, all of the questions which have been discussed by counsel, with a single exception, can be eliminated from the case.

It is conceded that the three contracts referred to are to be taken as parts of the same transaction, and construed together. To arrive at and settle the rights of the parties under the order and acceptance upon which the action was brought, it is necessary — *First*, to ascertain the relations which existed between Simpson & Co. and McPhee & McGinnity, and their mutual rights, liabilities and obligations, under the original contract for the erection of the house, after the assignment of that instrument; *second*, to determine the interest which remained vested in Simpson & Co. in the contract after the assignment; and *third*, to inquire what rights were transferred to Young & Savin by the order made by William Simpson, and what liability was assumed by McPhee & McGinnity by its acceptance.

The several instruments may be properly considered in the order in which they were made. The terms of the agreement between Simpson & Co. and Mrs. Clegg

are clear and easily understood. That agreement was made March 21, 1882. By its terms Simpson & Co. undertook to erect and complete a dwelling-house, in accordance with plans and specifications which had been agreed upon, on or before the 18th day of June next ensuing, for the sum of $4,040. This sum was to be paid as the work progressed. If Simpson & Co. completed the house, they were entitled to receive the entire contract price. Performance of the contract was a condition precedent to payment. This contract was not performed by Simpson & Co. Within a week after it was made it was assigned by them to appellants.

The first serious question in this case arises upon the construction of the agreement accompanying this assignment. This question will now be considered.

In the construction of a written instrument the first point is to ascertain what the parties themselves meant and understood. 2 Pars. Cont. 494. The purpose of the interpretation and construction of a contract is to give effect to the intention of the parties. Their intention must first be sought in the instrument itself. The language used by the parties is the best evidence of their intention. This is elementary. It is equally clear that to understand the meaning of the parties the contract is to be considered in its entirety. "Every contract ought to be so construed that no clause, sentence or word shall be superfluous, void or insignificant." 1 Add. Cont. 285.

Read in the light of these principles, what does the contract of assignment mean? The language of the instrument is as follows: "For and in consideration of McPhee & McGinnity furnishing to me all of the lumber, sash and doors for Mrs. G. H. Clegg's dwelling,  *  *  * amounting to about $700 as per bill, and they assuming the following subcontract bills as follows [subcontract bills], we hereby transfer to them our contract on said house, they paying the above bills, and we agreeing to attend to and build said house, in consideration of them

paying to us the balance of our contract price with Mr. and Mrs. G. H. Clegg after bills are paid."

To ascertain the meaning of this agreement it is essential first to discover and define the mutual promises of the parties, and then to ascertain the consideration moving from each to the other to sustain them.

It is plain that Simpson & Co. undertook to transfer to the appellants their contract for the erection of the house. It was undoubtedly their intention to vest in McPhee & McGinnity the right to receive the full sum of $4,040 upon their performance of the agreement. The consideration of that transfer was the furnishing of the materials mentioned, and the assumption by McPhee & McGinnity of all the bills which had been incurred, and their agreement to pay the same. This disposed of $2,872 of the contract price. In addition to transferring the contract, Simpson & Co. further agreed to "attend to and build said house." It is contended by counsel for appellants, with much reason, that this was a separate and distinct agreement on their part, the consideration of which was the payment of the balance of the contract price by McPhee & McGinnity, after paying the bills incurred by them in the completion of the house, or, in the language of the agreement, "the balance of the contract price  *  *  *  after bills are paid." By this construction of the contract Simpson & Co. would be entitled to the net profits of the undertaking, and nothing more.

Thus far only the instrument itself has been considered. If, however, the intent and meaning of the parties is not clearly disclosed by the language of the contract, then competent evidence bearing upon the construction given to the instrument by the parties themselves, by their acts and conduct in its performance, may be considered. 1 Greenl. Ev. §§ 277, 288; 1 Add. Cont. 293; *Goddard v. Foster,* 17 Wall. 123, 142; *Coal Co. v. Tierney,* 5 Colo. 583; *Haldeman v. Chambers,* 19 Tex. 1; *Emery v. Webster,* 42 Me. 204.

In *Knight v. Worsted Co.* 2 Cush. 271, the rule is stated as follows: "Parol evidence, though not admissible to add to or vary the terms of a written contract, is admissible to prove facts and circumstances as to the relations of the parties, and the nature, quality and condition of the property which is the subject of the contract, and also the acts of the parties at and subsequent thereto, for the purpose of showing their understanding of its terms."

The acts and conduct of the parties, as shown by the evidence of both McPhee and William Simpson, tended to show that their understanding of the agreement was in perfect accord with the construction contended for by appellants.

It appears that, immediately after the execution of the assignment, the appellants undertook the performance of the contract, and that William Simpson was employed to superintend the work; that his brother John acted as time-keeper; that appellants purchased all materials, employed all labor, and in fact did everything which was essential to the building and completion of the house. This evidence tended to show that the undertaking of Simpson & Co. "to attend to and build the house" meant that they were to superintend the work and nothing more; and that they were to receive, not all the contract price remaining after payment of the sums mentioned in the instrument, but the balance after all bills were paid, or, in other words, the "net profits or proceeds." Under such construction of the contract all that Simpson could transfer to appellees was his interest in the contract, as measured by the "net profits or proceeds" after its full performance.

But we must not overlook the rights of appellees. When one party is allowed to produce evidence *aliunde* to aid in determining the meaning of a written agreement susceptible of different constructions, the other party must be allowed the like privilege. It is therefore

improper that we should further discuss the effect of the testimony admitted on the trial, and which, though properly admitted, was in effect afterwards excluded by the action of the court in directing a verdict. It may be that by such action of the court appellees were misled as to the necessity or propriety of offering like evidence. It follows that, to entitle appellees to recover, it will be necessary for them to allege and prove that there were net profits arising from the construction of the house, unless by competent evidence a different construction of the contract shall be established.

It is not alleged in the complaint that any profits were realized upon the construction of the building. It is simply stated that, after payment of the specific sums mentioned in the assignment, and the amount due to Simpson for labor, there remained a certain sum, to ten-fourteenths of which appellees were entitled under the order. These allegations are in no sense tantamount to an allegation that net profits were realized.

There is nothing in the answer which could be interpreted to be an admission that there were net profits. On the contrary, it was expressly denied that any net profits were realized. For these reasons the instruction of the court directing a verdict was error.

The judgment is reversed and the cause remanded for a new trial, with leave to the parties to amend their pleadings in accordance with this opinion.

Reed and Richmond, CC., concur.

Per Curiam. For the reasons stated in the foregoing opinion of Commissioner Pattison the judgment is reversed and the cause remanded for a new trial, with leave to amend the pleadings.

*Reversed.*

Chief Justice Helm. I think the judgment of the superior court should be affirmed, and therefore dissent from the conclusions reached by the commission and adopted by the other members of the court.