[No. 5191.]
[No. 2799 C. A.]

## THE SAN MIGUEL CONSOLIDATED GOLD MINING COMPANY v. STUBBS & JAKWAY.

**1.  Contracts—Rules for Construing.**

In construing a written instrument, the first point is to ascertain what the parties themselves meant and understood, so as to give effect to the intention of the parties; and, to do this, the contract must be considered in its entirety, and no clause, sentence, or word should be considered as superfluous, void, or insignificant, if possible to avoid it.—P. 365.

**2.  Contracts—Ambiguous Terms—Parol Evidence to Explain.**

In an action on a contract, under which plaintiffs agreed to furnish lumber for a waterway to be constructed of the "heart of yellow pine," where there is doubt as to the meaning of such phrase as used in the contract, testimony as to the circumstances under which the contract was made, and the circumstances leading up to it, is admissible for the purpose of showing the sense in which the parties used it.—P. 365.

**3.  Same—Immaterial Evidence.**

In an action on a contract, under which plaintiffs agreed to furnish lumber for a waterway to be constructed of the "heart of yellow pine," where there is no doubt as to the meaning of such phrase as used in the contract, testimony in regard to the amount of sap in the lumber furnished under the contract as compared with the amount in the sample is immaterial, and should not be admitted.—P. 366.

4.  **Practice in Civil Actions—Conflicting Instructions.**

In an action on a contract under which plaintiffs agreed to furnish lumber for a waterway, the lumber to be equal in quality to a certain sample lot of material theretofore furnished, and to be constructed of the "heart of yellow pine," instructions that if plaintiffs furnished the same quality of lumber as the sample they were entitled to recover, are in direct conflict with other instructions that plaintiffs were bound to furnish "heart of yellow pine," though the sample may not have been "heart of yellow pine."—P. 366.

5.  **Practice in Civil Actions—Instructions—Not Based on Pleadings or Evidence.**

In an action on a contract for lumber furnished, where no allegation or proof of bad faith has been made, it is error to instruct that, if the objection to the lumber was in bad faith to create an excuse to order a different kind of lumber, plaintiffs were entitled to recover.—P. 366.

*Error to the District Court of San Miguel County. Hon. Theron Stevens, Judge.*

Action by F. W. Stubbs and L. C. Jakway, co-partners as Stubbs & Jakway, against The San Miguel Consolidated Gold Mining Company for breach of contract. From a judgment for plaintiffs, defendant brings error.

*Reversed and remanded.*

Messrs. STORY & STORY, Mr. L. W. ALLEN, and Messrs. GOUDY & TWITCHELL, for plaintiff in error.

Messrs. HOGG & WATSON and Mr. REESE MC-CLOSKEY, for defendants in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

On the 25th of July, 1900, defendants in error, plaintiffs below, entered into a contract in writing with the plaintiff in error, defendant below, whereby the plaintiffs agreed to furnish defendant with certain lumber for the construction of a flume under certain terms and conditions set forth in the memo-

randum of agreement. By the contract plaintiffs agreed to furnish defendant with 6,000 lineal feet of waterway in accordance with the plans and specifications attached to the contract. This waterway was "to be equal in quality to a certain sample lot of said material furnished by said first parties to said second party in the fall of 1899, and now in use immediately below said second party's power-house at Ames, Colorado." Provision was then made in the contract for the furnishing of certain other lineal feet of waterway as above described. This is followed by the clause: "All of the above described waterway to be constructed of the heart of yellow pine from two inch plank not less than 1⅝ inches thick and dressed on the inside." The contract also provides for the furnishing of sills, posts, caps, heading and covering for the waterway as required. There is a clause in the contract which provides that time is the essence of the contract, and that the liquidated damages for failing to deliver the material within the time specified should be $100.00 for each and every day's delay to so deliver said material.

The plaintiffs furnished a portion of the lumber necessary to make the waterway. This lumber, however, was rejected by defendant for the reason, as contended by it, that it was not heart of yellow pine; the defendant contending that lumber made of the heart of yellow pine should contain none of that portion of the wood called *sap,* but should be exclusively *heart,* claiming that the heart of yellow pine, when used for flume purposes, would last for twenty years, while that portion of the board which contained sap, being more susceptible to decay, would last but a few years, and that when the sap became decayed it would necessarily require the repair of the flume.

About the 15th of September, 1900, there was a conference between certain members and employees of defendant company, one of the plaintiffs and a representative of plaintiffs, at which conference it was to be determined what should be done in the matter, defendant refusing to accept lumber which was not of heart of yellow pine, and plaintiffs confessing their inability to furnish lumber of a different character than that which had been supplied. The result of this conference was that defendant agreed to pay to plaintiffs $8.00 per thousand feet, board measure, for the lumber which they had furnished, and to use it as a covering for the flume, and to obtain redwood from California out of which to construct the flume itself. Plaintiffs continued to furnish the other lumber mentioned in the complaint.

Defendant obtained the redwood from California and constructed its flume. The flume as constructed cost about fifteen cents more per lineal foot than it would have cost had it been made of the lumber which plaintiffs agreed to furnish. The defendant was unable to obtain the lumber from California within the time prescribed in the contract with the plaintiffs. As a consequence defendant was unable to complete the flume before the ground became frozen and the storms of winter commenced. Defendant failed to pay plaintiffs for all of the lumber which they furnished, and plaintiffs brought suit to recover the value.

Defendant filed a counter-claim setting up the contract, alleging its violation and asking for damages because of the increased cost of the lumber obtained from California and the delay in the construction of the flume. The plaintiffs recovered judgment, and defendant brought the matter to the court of appeals upon writ of error.

While plaintiff in error has made many assign-

ments of error, we will discuss but a few of them, for the reason that, inasmuch as there must be a new trial of this matter, the questions raised by the other assignments may not again arise.

The defendant offered to prove the conversations leading up to the making of the contract; that plaintiffs were informed of the purposes for which the lumber was desired, and that at that time there was some controversy between the parties as to whether or not the waterway should be made of heart of yellow pine; that plaintiffs desired to have the word "heart" stricken from the contract, but that defendant insisted upon its remaining. This testimony was excluded by the court upon the ground that the contract spoke for itself.

Upon rebuttal, plaintiffs were permitted to prove, over the objection of defendant, that the lumber for the waterway furnished by plaintiffs was as good as the sample theretofore furnished, and mentioned in the contract, and that that furnished contained as much heart of yellow pine as the sample.

In the third instruction to the jury given by the court, upon its own motion, it was said:

"Under this contract the plaintiffs were bound to furnish the heart of yellow pine for such waterway or flume-box, without regard to the question as to whether the sample mentioned was or was not heart of yellow pine."

In the sixth instruction to the jury, at the instance of the plaintiffs, it was said, in effect: that the defendant could not recover upon its cross-bill if the jury should find that the material furnished by the plaintiffs was of the quality of the sample mentioned in the contract.

In the tenth instruction to the jury, given at the instance of the plaintiffs, it was said that if the defendant refused to accept the lumber delivered by

the plaintiffs, and the refusal had for its object the securing of redwood for said waterway on acount of its superiority therefor, and that said refusal was not in good faith because the lumber and material furnished by plaintiffs were not of the kind and quality mentioned in the contract, and that the lumber and material were equal in kind and quality to the sample mentioned in the contract, then the jury should find for the plaintiffs upon the cross-bill.

In the first instruction given to the jury upon the request of the defendant, it was said that under the contract the plaintiffs were bound to furnish the heart of yellow pine for the waterway, without regard to the question as to whether the sample mentioned was or was not heart of yellow pine. If there was any question as to the meaning of the expression "heart of yellow pine," as used in the contract, the defendant had the right to prove the circumstances under which the contract was made.

The situation of the parties at the time of the making of the contract, and of the property which is the subject-matter of the contract, and the intention and purposes of the parties in making the contract are often of great service in guiding the construction, because this intention will be carried into effect so far as the rules of language and the rules of law will permit. The party will be held to that meaning which he knew the other party supposed the words to bear, if this can be done without making a new contract.—2 Parsons on Contracts 500; *St. L. & Denver Land & Mining Co., etc., v. Tierney,* 5 Colo. 582; 2 Addison on Contracts 182; *Emery v. Webster,* 42 Me. 204; *McPhee v. Young,* 13 Colo. 80.

This is not for the purpose of varying the terms of the contract. Of course, for that purpose no testimony in relation to the conversation, acts of the parties, or circumstances surrounding the making

of the contract at or before the time when it was reduced to writing is admissible, but this rule is directed only against the admission of testimony to change the language employed by the parties in making the contract, but the writing may be read by the light of surrounding circumstances in order more perfectly to understand the intention and meaning of the parties. The duty of the court is to ascertain not what the parties may have intended, as counter-distinguished from what their words expressed, but what is the meaning of the words they have used. —1 Greenleaf on Evidence, § 277; *Kretschmer v. Hard*, 18 Colo. 233.

The lumber to be furnished by the plaintiffs for the waterway under the terms of the contract should conform to two standards, namely, it should be the heart of yellow pine, and also should be as good as the sample theretofore furnished. It is conceded that the sample furnished was not heart of yellow pine, and, if it was not, then the description ''heart of yellow pine,'' as used in the contract, must be given force or it must be excluded entirely.

In the construction of a written instrument, the first point is to ascertain what the parties themselves meant and understood. The purpose of construction is to give effect to the intention of the parties. It is elementary that the contract is to be considered in its entirety. No clause, sentence, or word shall be considered as superfluous, void, or insignificant if this can be avoided.—*McPhee v. Young, supra;* 1 Addison on Contracts 285; *Haleman v. Chambers,* 19 Tex. 46.

If there was any doubt as to the meaning of the phrase, ''heart of yellow pine,'' as used in the contract, the testimony offered by defendant as to the circumstances under which the contract was made

and the conversations leading up to it were admissible for the purpose of showing the sense in which the contracting parties used this phrase. If there is no doubt as to the meaning of the words, then the testimony of plaintiffs' witnesses, wherein they compared the amount of sap that was in the lumber furnished by plaintiffs under this contract, with the amount of sap in the sample, was immaterial, and should not have been admitted.

By instructions one and three the court told the jury that the plaintiffs were bound to furnish heart of yellow pine, notwithstanding the fact that the sample may not have been heart of yellow pine.

By instructions six and ten the court informed the jury that if the plaintiffs furnished the same quality of lumber as the sample, it should find for the plaintiffs.

These instructions are in absolute conflict. There is no way by which they may be reconciled. So that the minds of the jury must have been hopelessly confused as to what was the true intent and meaning of the contract.

By instruction ten the jury is told that if it believes that the objection to the lumber was not made in good faith, but was made for the purpose of creating an excuse to order the redwood, it should find for the plaintiffs. There are no allegations in the complaint concerning the bad faith of defendant, and we have examined the record very carefully and are unable to find any testimony which shows that the defendant acted in bad faith. No contention of that kind seems to have been made, either in the pleadings or the evidence. The court clearly erred in giving instructions six and ten.

For the reasons hereinbefore stated, the judgment of the district court must be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GODDARD concur.