[No. 5766.]

## FEARNLEY V. FEARNLEY.

1.  **Contracts—Construed**—The wife, "in consideration of one dollar in hand paid" by her husband, agreed "to pay the following sums to the persons herein named upon the promise and conditions herein specified." The persons named were designated as brothers and sisters of the husband. Held, a contract between the wife and the husband.—P. 421.

2.  **Contracts—Construction**—The court, in ascertaining the meaning of a contract, takes into consideration the situation of the parties, the object of the contract, and the subject-matter. Each party is bound by that meaning of the words which, to his knowledge, the other party ascribed to them, where they are susceptible of this meaning.—Pp. 422, 424.

A contract to "give" money to another, resting upon sufficient consideration, must be held a promise to pay.—P. 425.

27

In construing the covenant of the wife with the husband to pay certain sums after his death to his brothers and sisters, it is proper to take into consideration the previous will of the husband, making the same provision for the same beneficiaries, the subsequent execution of a conveyance by the husband to the wife of all his property, merely to avoid possible litigation, and its delivery upon the verbal promise to pay the legacies set down in the will.—P. 424.

The whole contract, as well as the circumstances of its execution, are to be considered in seeking the intent of a particular clause.—P. 424.

3.   Contract—Consideration — One executing a written contract made in evidence of a previous oral agreement, for which he received a consideration, cannot allege want of consideration in an action upon the writing.—P. 424.

4.   Assignments—What May Be Assigned—Generally, rights which do not pass to the distributees of a decedent, are not assignable; but the rule has no application where the wife, in consideration of the conveyance to her of all the husband's property, stipulates to pay certain specified sums to his brothers and sisters, and among others, five hundred dollars to one named— "$100 each year, the first within one year of the death of her husband, but, in case of his death at any time, said sum, or any unpaid portion of it, is not, in any event, to be paid to heirs." It was said that this contract certainly contemplated performance of the promise made, and that only as to sums not mature at his death was her liability suspended.—P. 426.

5.   Evidence — Handwriting — The belief of a witness acquainted with the handwriting in question is admissible; that his acquaintance with the person writing was limited goes only to his credibility.—Pp. 426, 427.

6.   Evidence — Hearsay — Hearsay, of the death of a person, from his immediate family, is sufficient prima facie to establish his death.—P. 427.

7.   Contract—Delivery—Husband conveyed to his wife all of his property, and she, in consideration thereof, verbally promised him to pay certain sums to his brothers and sisters and to execute a writing to this effect.   The writing was signed and delivered to the attorney of the husband while the latter was in his last agonies, and unconscious.   The wife was held bound though there never was any formal delivery to the husband.— P. 428.

8.   The Contract Capacity of Parties — The wife' who has verbally entered into a contract with her husband, while of sound

mind, will not be heard to object that, at the execution and delivery. to his attorney of her writing evidencing the contract, her husband was unconscious.—P. 428.

9. Witnesses — Confidential Communications — If the client himself testifies to the particulars of a consultation with his attorney, the attorney may be examined in regard thereto.—P. 430.

10. Appeals—Harmless—Incompetent testimony to a point established by sufficient competent testimony is harmless.—P. 430.

11. Contract—Fraud in Procuring — The mere fact that the party subscribed the contract when very faint and miserable, that she was told it was all right and signed it without reading it, is no defense when no fraud or imposition appears and it is made plain that the writing accorded with the previous verbal agreement which it was intended to evidence.—P. 432.

12. Jury—Correcting Verdict—A jury, even after being discharged, may be recalled to correct a manifest error in the amount of a verdict.—P. 432.

*Appeal from Denver District Court.*
*Hon. Peter L. Palmer, Judge.*

Mr. R. H. GILMORE, for appellant.

Mr. O. E. JACKSON and Mr. GEORGE F. DUNKLEE, for appellee.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Robert Fearnley departed this life May 1, 1900. April 21 preceding his death, appellant, the wife of deceased, signed the following contract:

"THIS AGREEMENT, made this 21st day of April, A. D. 1900, by Otilla F. Fearnley, for and on behalf of the persons hereinafter mentioned, Witnesseth:

"That for and in consideration of one dollar in hand paid to her by Robert Fearnley, and other good and valuable considerations, receipt whereof is hereby confessed and acknowledged, she does hereby contract and agree, and binds herself, her heirs, executors and administrators, to pay the following sums

to the persons herein named, upon the terms and conditions hereinafter specified:

"To Elizabeth Brook, sister of her husband, Robert Fearnley, or her heirs, of Bristol, near Leeds, Yorkshire, England, the sum of five hundred dollars;

"To Charlotte Atkinson, sister of her husband, Robert Fearnley, or her heirs, of Adwalton, near Bradford, Yorkshire, England, the sum of five hundred dollars;

"To Sarah Ann Yates, sister of her husband, Robert Fearnley, or her heirs, of Putsey, near Bradford, Yorkshire, England, the sum of five hundred dollars;

"To Annie Martin, sister of her husband, Robert Fearnley, or her heirs, of Bristol, near Leeds, Yorkshire, England, the sum of five hundred dollars;

"To Samuel Fearnley, of Leadville, Colorado, brother of her husband, Robert Fearnley, or his heirs, the sum of five hundred dollars.

"The said five hundred dollars to be paid to each of the above named persons, or, in case of their death, either before or after the time of the making of this contract, then to the legal heirs at law of any such deceased person, payment to be made as follows:

"One hundred dollars to be paid to each of the said persons or heirs within one year from the death of her husband, Robert Fearnley; and one hundred dollars on or before two years from his said death; and one hundred dollars on or before each year thereafter until the full sum of five hundred dollars each has been paid, as herein provided, to the said parties or their heirs; but that the said sums or any of the payments are not to bear interest.

"I also agree to give to George W. Fearnley, of Pittsburg, Pennsylvania, the sum of five hundred dollars for his own use and benefit, to be paid in like manner as the above, one hundred dollars each year,

the first to be paid within one year of the death of my husband, but in case of his death at any time, said sum or any unpaid portion thereof is to cease absolutely, and not, in any event, to be paid to his heirs.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and date first above written.

"OTILLA F. FEARNLEY.   (Seal)"

Subsequent to the death of Robert Fearnley the plaintiff, in his own right, and as the assignee of the beneficiaries named in the contract, or their heirs, brought suit against Mrs. Fearnley upon the contract. The trial of the case resulted in a verdict and judgment in favor of plaintiff, from which the defendant appeals.

It is urged that the obligation sued upon is not a contract upon its face, for the reason that it does not appear that defendant thereby entered into contractual relations with any one. We are of the opinion that the contract in question clearly shows from the language employed that the defendant entered into the contract with her husband. It recites, in effect, that it is for the benefit of certain persons named therein, and that the consideration therefor was received from Robert Fearnley by the defendant. If, however, there is any doubt regarding this construction, it arises from the fact that the language of the contract is not sufficiently specific, but that doubt, in the circumstances of this case, is at once removed by the application of the rule universally recognized, that in construing a contract the first point to ascertain is, what the parties meant, understood and intended, as determined by the words employed, so as to give full effect to their intention. In making this inquiry it is competent to consider the facts and circumstances surrounding the transaction

at the time the contract was executed, and to take into consideration the subject-matter and situation of the parties at the time of its execution, as well as the object of the parties in making it.—*St. L. & D. L. & M. Co. v. Tierney,* 5 Colo. 582; *C. F. & I. Co. v. Pryor,* 25 Colo. 540; *True v. Rocky Ford C. R. & L. Co.,* 36 Colo. 43; *San Miguel C. G. M. Co. v. Stubbs,* 39 Colo. 359; *Brotherhood Accident Co. v. Jennings, ante,* p. 144, 96 Pac. 982; *C., R. I. & P. Ry. Co. v. D. & R. G. R. Co.,* 143 U. S. 596.

The circumstances under which the contract was signed by the defendant are substantially as follows: In 1899 the deceased executed a will, by which he bequeathed five hundred dollars each to the persons named in the contract, and the remainder of his property to his wife, the defendant. In January following, Fearnley, for reasons which it is not necessary to notice, believed that, in order to avoid disputes and litigation after his death, it was advisable for him to execute deeds conveying the property to his wife. He was advised by counsel that in order to make such deeds effective, they must be delivered before his death. As a result of several deliberations with Mrs. Fearnley and his brother Joshua. Robert Fearnley revoked his will and executed deeds of his property to his wife, but did not deliver them, the arrangement with her being (to which she assented) that she would pay his brothers and sisters sums equal to the bequests made them by the will. Subsequent to this action he again advised with counsel, which was about April 7th, 1900, informing him of the execution of the deeds, and a bill of sale of personal effects, and at this time stated that he wanted his brothers and sisters to have their bequests as fixed by the will executed in September, to which was appended a memorandum stating in substance that the will is to be of no effect and will not

be probated, but will simply serve as a memorandum by which Mrs. Fearnley is to pay the legacies to his brothers and sisters as therein specified. Fearnley was advised by counsel that it was necessary to deliver the deeds during his lifetime, which was accordingly done, and they were placed of record. Fearnley seemed still impressed with the idea that litigation was sure to ensue, and asked counsel if anything further could be done to avoid it. At this conversation (when the deeds were delivered) he also expressly stated that he wanted his brothers and sisters to have their bequests of five hundred dollars each, and in order that there might be no question of the payment of such bequests, suggested that Mrs. Fearnley should execute a contract. To this suggestion Mrs. Fearnley stated that it would not be necessary, as she would carry out his wishes in this respect, as evidenced by the old will and memorandum thereto attached; but that, if Mr. Fearnley wanted the contract, she would execute it. Subsequently the will was prepared and signed by Mr. Fearnley. At the time of its execution, however, he insisted that Mrs. Fearnley should sign a contract, whereby she bound herself to pay his brothers and sisters the amounts designated in the original will. Mrs. Fearnley assented to this arrangement, and a few days later the contract in question was presented to her, which she then signed.

From these facts and circumstances which the testimony established, it is clear, if it is necessary to consider any extraneous matters for the purpose of reaching a correct understanding of the contract, that it was made by the defendant with her husband in consideration of the transfer and devise to her of all his property.

The contract is also attacked upon the ground that it was executed by the defendant without any

consideration. This contention is based upon the proposition that at the time of its execution the title to the property of her husband was already vested in her. The premise is wrong. The testimony established that from the time Fearnley concluded to deed the property to his wife, in lieu of devising it by will, it was with the understanding that she would pay the devisees named in the will the respective amounts thereby bequeathed them, and the execution of the contract upon her part was but a consummation of their agreement. Prior to the execution of the contract by Mrs. Fearnley the agreement between her husband and herself rested in parol. A promisor binds himself by merging an oral agreement into a written contract, and cannot escape liability thereon merely because the consideration had passed to him prior to its execution.—*Noyes v. Young*, 79 Pac. (Mont.) 1063.

The clause in the contract which recites, "I also agree to give to George W. Fearnley, of Pittsburg, Pennsylvania, the sum of five hundred dollars for his own use and benefit, to be paid in like manner as the above," is assailed upon the ground that the defendant thereby only entered into a voluntary promise to give, and hence, it is argued such agreement, being without consideration, cannot be enforced. When interpreting any particular clause of a contract, the court is required to examine the entire contract, and may also consider the circumstances under which it was made and the purpose for which it was executed.—*C., R. I. & P. Ry. Co. v. D. & R. G. R. Co., supra;* 9 Cyc. 579.

It is also a rule of construction that a contracting party will be held to that meaning of the words employed of which they are susceptible, which he knew the other party supposed the words to bear, when this can be done without making a new contract

for the parties.—*St. L. & D. L. & M. Co. v. Tierney,
supra; San Miguel C. G. M. Co. v. Stubbs, supra.*

The jury found, and the testimony is ample to
support their finding, that the intention of Robert
Fearnley and his wife, when his property was con-
veyed and devised to her, was, that she should pay
the amounts mentioned in the contract to the parties
named in lieu of the bequests to them made by Fearn-
ley in his will executed in September, 1899; and
hence it follows, that although in the contract relat-
ing to the amount to be paid to George W. Fearnley
the word "give" was employed instead of "pay,"
it appears from the contract as a whole that this
clause rested upon the consideration moving from
Robert Fearnley, and that both parties to the agree-
ment knew that each understood the word "give,"
as employed, to mean that Mrs. Fearnley should pay
George W. Fearnley the amount mentioned in her
agreement.    When the intention of the contracting
parties is manifest, it will control in the interpreta-
tion of their agreement, regardless of the employ-
ment of inapt expressions to evidence their intention.
—*Tillitt v. Mann,* 104 Fed. 421; *Carter v. Alexander,*
71 Mo. 585.

The clause under consideration further provided
that the five hundred dollars was to be paid in install-
ments as follows: "One hundred dollars each year,
the first to be paid within one year of the death of
my husband, but in case of his death (George W.
Fearnley's) at any time, said sum or any unpaid
portion thereof is to cease absolutely, and not in any
event to be paid to his heirs."

It is urged by counsel for defendant that because
of this provision the money would not descend to the
heirs of George W. Fearnley, and therefore his right
of action against her is not assignable.    Generally
speaking, as has been decided by this court in *Home*

*Ins. Co. v. A., T. & S. F. Ry. Co.,* 19 Colo. 46, and by the court of appeals in *Mumford v. Wright,* 12 Col. App. 214, "descendibility and assignability go hand in hand." But that proposition is not applicable or controlling. The contract provided for the payment of installments to George W. Fearnley at specified times. The parties certainly contemplated that Mrs. Fearnley would comply with her contract, and that each installment would be paid as it became due; and hence, applying the rules for construing contracts above announced, and particularly the one to the effect that the manifest intention of the contracting parties will control in the interpretation of their agreement, regardless of the employment of inapt expressions to evidence their intention, we conclude that the provision in question only contemplated that such installments of the sum to be paid George W. Fearnley as were not due at the time of his death should not be paid to his heirs.

An instrument purporting to be a power of attorney executed by the heirs of Elizabeth Brook and Annie Martin, authorizing Joshua Fearnley to assign their interest in the contract, was admitted in evidence on the part of plaintiff. Error is assigned by counsel for defendant because there was not sufficient proof of its execution; and for the further reason that there was no proof that the Brooks were the heirs at law of Elizabeth Brook. The first assignment is clearly without merit. Fearnley testified that he was acquainted with the handwriting of all the parties executing the power of attorney, and that in his opinion the signatures appended thereto were genuine. True, it probably appears that his means of knowledge were limited, but that only affected the weight and credibility of his testimony. Again, upon this subject, the power of attorney was witnessed by one G. W. Mason. Fearnley testified positively to

the signature of this attesting witness. It appears that the parties executing the power of attorney and the subscribing witness reside in England, where it was executed. In *Henrick v. Patrick*, 119 U. S. 147, it was held that a deed executed and witnessed by persons residing abroad was properly proved by testimony of a witness to the effect that he was acquainted with the handwriting of the subscribing witness to the deed, and believed that his signature was genuine.

With respect to the heirship of Ann and Ada Brook, who executed the power of attorney in question as the heirs-at-law of Elizabeth Brook, deceased, there was testimony to the effect that members of the family of deceased had written letters to members of the family of Joshua Fearnley, and had sent funeral cards to the latter, informing them of the death of his sister, Elizabeth. This information was hearsay, but hearsay information of the death of a person derived from the immediate family of deceased is sufficient *prima facie* to establish that fact. —*DuPont v. Davis*, 30 Wis. 170; *Anderson v. Parker*, 6 Cal. 197.

There is testimony tending to prove that on the date Mrs. Fearnley signed the contract sued upon, the deceased was unconscious, and from that time until his death, mentally incapacitated from transacting any business. When signed the contract was handed to Mr. Dunklee, who had prepared it. It is urged by counsel for defendant that the contract is wanting in validity for the reason that it was never delivered, because deceased could not receive it, and even though Mr. Dunklee may have been acting at his instance and on his behalf, the mental condition of deceased revoked the authority of Dunklee to act for him in receiving the contract. It is true, as a general rule, that one of the essentials to the validity

of a contract is that it must be delivered, but that rule is not applicable in the circumstances of this case. The testimony established that the defendant executed the contract in pursuance of an agreement between her husband and herself, that she should execute it in consideration of her husband conveying and devising to her all of his property. She has accepted the consideration for her agreement, and in such circumstances the fact that her contract was not formally delivered to the promisee does not render it invalid. In other words, she has received, by conveyance and will, the whole of the property of her deceased husband, in consideration of which she agreed with him at the time of the execution of such conveyances and will, that she would enter into the contract in question, and by signing it, she is bound thereby, although it may never have been formally delivered to him.

It is also urged by counsel for defendant that the mental incapacity of deceased at the time defendant signed the contract sued upon prevented him from assenting to its terms, and that for this reason it is invalid. The parties to the contract had agreed upon its terms when the husband of defendant was mentally capable of contracting. He had performed his part of their agreement. She had received the conveyances which he executed and delivered, and the contract which she subsequently signed was but an evidence of their agreement as to what she should do in consideration of the conveyance and devise of the property to her. She has had the full benefit of the agreement between herself and her husband, and in such circumstances she will not be permitted to avoid her obligation upon the ground that her husband was mentally incapacitated at the time she signed the contract which she had previously agreed with him to execute.

It is also urged by counsel for defendant that the evidence tending to prove the understanding between deceased and his wife at the time he executed his will with respect to the payment of certain sums to his brothers and sisters was not admissible for the reason that it tended to vary the terms of the will by parol. This claim is without merit. The testimony, as a whole, established that the execution and delivery of the deeds and bill of sale, the execution of the will by deceased, and the making of the contract by the defendant, were one transaction, which was finally consummated when the defendant signed the contract, and the evidence objected to was competent for the purpose of establishing what the transaction was, in fact, as well as for the purpose of showing the consideration received by the defendant for her contract.

Mr. Dunklee was the attorney for deceased, and had sustained that relation to him for several years prior to his death. It is also claimed by counsel for defendant that Dunklee was regarded by her as her counsel. As a defense to the contract the defendant filed an answer, charging Dunklee with fraud and deceit in obtaining the contract from her. She went upon the stand and testified respecting matters intended to establish this defense. This involved what transpired between her husband and herself and Mr. Dunklee, who was acting for them in the preparation of the deeds, bill of sale, will and contract. Subsequent to the reception of her testimony, Mr. Dunklee was permitted, over her objection, to give his version of what was said, and what transpired. This, it is claimed, was error, because of the provisions of § 4824, Mills' Stats., which inhibits an attorney, without the consent of his client, from disclosing any communication made by the client to him, in the course of professional employment. The

law as thus declared should be rigidly enforced, but there are instances when the statute does not apply, of which the case at bar is an example. The object of the statute is to extend to the client the privilege that his communication shall not be disclosed without his consent. It is a personal privilege, and if he makes the disclosure himself, it ceases to be a secret. The defendant testified to what transpired between her husband, Mr. Dunklee and herself. By so doing she made it public, and thereby waived her right to object to Mr. Dunklee giving his own account of the matter.—*Hunt v. Blackburn,* 128 U. S. 464; *State v. Madigan,* 66 Minn. 10.

It is also contended by counsel for defendant that the court erred in allowing Mr. Dunklee, who had prepared the first will of Robert Fearnley, deceased, to testify with respect to its contents. It appears from the record that subsequent to the testimony of the attorney on this subject, Joshua Fearnley, regarding whose competency to testify no question is raised, stated what the contents of the will were. Joshua Fearnley's testimony is substantially the same as that of Mr. Dunklee on this subject. So that, if the court erred, as contended by counsel for defendant, in allowing Mr. Dunklee to state the contents of this will, it affirmatively appears that such error was without prejudice to defendant. Nonprejudicial error will not work a reversal of a judgment on review.

Numerous errors are assigned by counsel for defendant upon instructions requested in her behalf and refused, and on those given. Several of the questions thus raised have been disposed of adversely to the contention of counsel in the preceding discussion, and it is, therefore, unnecessary to reconsider them. Neither is it, in the circumstances of this case, necessary to consider in detail the remain-

ing errors assigned on the subject of instructions. The testimony on behalf of the plaintiff clearly establishes that from the time Robert Fearnley began to consider deeding his property to the defendant, in lieu of the provisions of his first will, down to the time when he executed his second will, that it was with the understanding with the defendant that she should pay his brothers and sisters the sums devised by his first will. Nowhere does the defendant, except in the most indirect manner, deny that such was the understanding between her husband and herself, and it seems incredible that she would have signed the contract sued upon unless such had been the understanding with her husband. We therefore conclude that the testimony as a whole so clearly established the issues in favor of the plaintiff that the matter of instructions to the jury is of no moment, because the verdict is clearly right, and could not have been otherwise than as returned by the jury.

But appellant seeks to avoid her contract because she signed it without knowledge of its contents, and when her mental condition was such that she was not capable of understanding it. Her own testimony bearing on the circumstances under which she signed the contract was not sufficient to justify the court submitting either of these questions to the jury. She says, in substance, that when the contract was presented for her signature by Mr. Dunklee, she felt very faint and miserable; that he said he had come to have her sign it, and she thought it was all right, as long as it was Mr. Dunklee. She says she asked where she should sign her name; that she hesitated, and Mr. Dunklee said: "It is all right, Mrs. Fearnley. I have just come for your signature"; that she signed it, although there was not a word said in regard to its contents, and that she did not examine it because there was no opportunity given her for that

purpose; and that Mr. Dunklee took the paper away as soon as it was signed. This statement upon her part is wholly insufficient to avoid the contract. She does not claim that there was any misrepresentation made to her regarding its contents, or that there was any fraud practiced in procuring her signature; or that she requested, and was denied, the opportunity to examine it and acquaint herself with its provisions; and her own version of what transpired at the time she signed the contract serves to conclusively establish that she knew it was to evidence the agreement between her husband and herself in consideration of which he had conveyed and willed his property to her; otherwise, she would have made some inquiries regarding it.

The jury returned a verdict in favor of the plaintiff for a sum which represented four installments under the contract, and the interest thereon. At the suggestion of counsel for plaintiff, the verdict was changed so as to include only three installments and interest, because it was thought only three installments were due. Subsequently it was discovered that the verdict of the jury, as first returned, was correct. Thereafter, at the request of counsel for the plaintiff, the jury were reassembled, and asked to return such verdict as they believed should have been returned, although the jury, previous to this, had been discharged from further consideration of the cause. There was no such error committed by this action as would justify a reversal. There was no dispute with respect to the amount which plaintiff was entitled to recover in the event the issues upon which such recovery depended were found in his favor. There were four installments due under the contract instead of three, and it was, therefore, not error for the court to recall the jury and require them

to correct their verdict with respect to a matter regarding which there was no dispute.

Counsel for defendant has presented an able brief on the questions of law argued and in support of the errors assigned upon which he bases his contention that the judgment of the trial court should be reversed. We have examined with care all the testimony as abstracted, and from this source conclude that the evidence so clearly and conclusively establishes that Mrs. Fearnley executed the contract sued upon with full knowledge of its contents, in pursuance of a definite understanding with her husband, that she should do so in consideration of the conveyances and devise to her of all his property in lieu of the provisions of the will which he executed in September, 1899, and that this arrangement was made between them prior to the delivery of the conveyances to her and the execution of his last will, that if the court erred in refusing instructions requested, or committed error in those given with respect to the issues made by the pleadings, the defendant was not thereby prejudiced, for the reason that the verdict returned by the jury was clearly right. In short, we conclude from the testimony as a whole that it conclusively establishes that Mrs. Fearnley knowingly executed the contract sued upon for a valuable consideration, and she cannot escape complying with its terms for errors committed at the trial, which did not prejudice her substantial rights.

The judgment of the district court is affirmed.

*Affirmed.*

Mr. JUSTICE CAMPBELL and Mr. JUSTICE BAILEY concur.

*On Petition for Rehearing.*

Mr. JUSTICE GABBERT delivered the opinion of the court:

It is contended the conclusion that the admission of the testimony of Dunklee regarding the contents of the first will, if erroneous, was not prejudicial, is not justified from the record, because Mrs. Fearnley denies that this will contained bequests to the brothers and sisters of the deceased. She does deny it by saying that the first will only contained bequests to two of his children, in the sum of ten dollars each. While the bequests in the original will might aid in throwing some light upon the transaction between Mrs. Fearnley and her husband which led up to the execution of the contract sued upon, that testimony is by no means all to be considered on that subject. It is incredible that she would have signed the contract under the circumstances she says she did, *i. e.,* without any inquiries regarding it whatever, unless she knew that it was to evidence the consummation of the previously existing agreement between her husband and herself in consideration of which he deeded and willed his property to her, so that the record discloses she was not prejudiced by the testimony of Dunklee regarding the contents of the first will, even if it was not admissible. True, excerpts from the testimony in the case tend to maintain the assertion of counsel for the defendant that she never agreed with her husband to pay the sums mentioned in the contract to his brothers and sisters, but the testimony must be examined as a whole, and what it establishes thus determined; and when so examined and considered, the conclusion is irresistible that Mrs. Fearnley executed the contract with full knowledge of its contents and obligations, and that it was executed in pursuance of a definite agree-

ment with her husband that she would pay the brothers and sisters the respective sums therein specified.

Mrs. Fearnley is certainly not in a position to complain of the action of the trial court in allowing Mr. Dunklee to testify in relation to what occurred between herself and Mr. Dunklee. The statute, § 4824, Mills' Stats., does not apply. When a party invokes the protection of a statute, it should not be unduly extended or restricted, but should fairly be construed and applied according to the plain import of its terms, so as to effectuate its intent and purpose. As between attorney and client, the rule prescribed will not be enforced to the prejudice of the attorney. As stated in the main opinion, Mrs. Fearnley filed an answer charging Dunklee with fraud and deceit in obtaining the contract from her, and went upon the witness stand and testified to matters intended to establish this defense. Mr. Dunklee's own interests were vitally affected, and if he had not been permitted to go upon the stand and give his version of what occurred between himself and Mrs. Fearnley, he would have been placed in the attitude of having committed a fraud without opportunity afforded to contradict it. When Mrs. Fearnley testified to what occurred, she waived her right to object to Mr. Dunklee giving his own account of what transpired. She voluntarily opened the door, which otherwise would have remained closed. She cannot successfully complain that the one whom she invited to enter accepted her invitation. It is urged, however, that Mrs. Fearnley's action in going upon the witness stand and testifying cannot be regarded as extending the right to Dunklee to testify in relation to the communications of the deceased. These communications, as we stated in the original opinion, related to matters which transpired between Mrs.

Fearnley, her husband and Dunklee, he being attorney for both, and when she testified in relation to these matters, she cannot exclude Dunklee as a witness with respect to the same matters. Otherwise she would be given an advantage which the statute does not contemplate, and an attorney placed at a disadvantage which it was not the purpose of the law to impose.

The statute is a wise one, and the privileges which it is intended to extend must be carefully protected. The decision in this case, that the statute does not apply, is based entirely upon the particular facts recited, and cannot possibly be construed as a precedent which will result in depriving any one of the privileges which the statute creates for his benefit.

The petition for a rehearing is denied.

Mr. JUSTICE CAMPBELL and Mr. JUSTICE BAILEY concur.